**Lester DINWITTY et ux., Appellants,**

**v.**

**S. L. McLEMORE et al., Appellees.**

**No. 15079.**

Court of Civil Appeals of Texas.

Dallas.

May 4, 1956.

Rehearing Denied June 8, 1956.

Harvey C. Ford, Dallas, for appellants.

Gragg & Storey, Dallas, for appellees.

DIXON, Chief Justice.

This is a trespass to try title suit instituted by appellees to recover title and possession of real property including two houses on a tract of land ,78′ by 53′ on Topeka. Street, in the City of Dallas, Texas, being Lot F of William Combes Survey. Judgment for appellees was rendered following trial before a jury.

Appellants, who were defendants, pled not guilty, and by way of cross-action sought to establish their title through the three and ten year statutes of limitation, Vernon's Ann.Civ.St. arts. 5507, 5523a. They also claim that Annie D. Clark, then the owner, gave them the property in 1939 in consideration of their oral agreement to support and maintain Annie D. Clark the rest of her life.

Neither side was able to prove title through a chain of title to common source. In fact no common source of title was agreed on. However both sides claim through John Clark and his wife Annie D. Clark, who died in 1931 and 1942 respectively.

Appellees filed an abstract which traced their title back to the sovereignty through John Clark and his wife Annie D. Clark. The abstract showed an affidavit of heirship, dated April 16, 1947, stating that Frank Clark was the son, only survivor, and heir of John and Annie D. Clark. This affidavit was executed by Frank Clark in the office of a title company in connection with his sale of Lot F to Frederick Payne for a consideration of $325. Frederick Payne deeded the property, March 1, 1950, to ap-

pellees for a recited consideration of $500. Soon thereafter appellees moved two old houses onto the lot and remodeled them, before offering them for sale or rent.

The flaw in appellees' chain of title is that the affidavit of heirship of Frank Clark, executed in the office of a title company in 1947, when Frank Clark sold Lot F to Frederick Payne, was false. The truth is that Frank had been taken into the home of John and Annie D. Clark when he was about three years old. He had been reared and educated by the Clarks, as was his son Frank Clark, Jr. Though Frank Clark was often referred to as their son, John and Annie D. Clark, as shown by the undisputed testimony, including that of Frank Clark himself, were not the natural parents of Frank Clark. Nor is there any evidence in the record that they ever adopted him as their son.

By the time the case came on for trial appellees had learned of the above facts. Fearful of their inability to prove an equitable adoption of Frank Clark by John and Annie D. Clark, they did not plead or attempt to prove a regular chain of title to Lot F.

Lester Dinwitty and his wife Martha Dinwitty claim Lot F along with adjoining Lots E and G through oral conveyances. They assert that following the death of John Clark in 1931, his widow Annie D. Clark gave them the three adjoining Lots E, F, and G; first in 1931, again in 1932, and still again in 1938. There is no evidence to support the necessary elements of a claim of title to real estate by oral conveyance. Further, no issues on the question were submitted to the jury, and none were requested by appellants.

Following the death of Annie D. Clark in 1942, there was no administration of her estate. But after this suit was filed in 1950, Martha Dinwitty produced a written instrument which she claimed was the will of Annie D. Clark. The instrument purported to leave all of Annie D. Clark's property to Martha Dinwitty's lawyer. The purpose, according to Martha, was so that the lawyer could convey the property to Martha. In 1953, in a jury trial in District Court, a verdict was returned finding that Annie D. Clark had not signed the instrument. The will was refused probate. So Martha Dinwitty's assertion that she acquired title through Annie D. Clark's will must be considered without any foundation in fact.

The Dinwittys also claimed that they had used, occupied, and claimed the property in question for more than ten and three years respectively, and had also made improvements. However the jury found that they did not have adverse possession for ten years, and that they did not take possession of the houses and premises until June 15, 1950. These findings negatived their claim of a title by limitation. Appellants made no objection to the submission of these issues, and did not themselves request the submission of any issues.

Appellees testified that immediately after they bought the property from Frederick Payne in March 1950, they began to clear the lot of weeds and rubbish preparatory to moving the two houses onto the lot. These activities were watched by Martha Dinwitty, who lived nearby, and who asked first chance to buy the property. Appellees agreed, and when the houses were finished Martha paid one of the appellees $50 and made a deposit with Texas Title & Abstract Company of $450 as a down payment. She then took possession, but the deal was never closed because Martha insisted on taking title in her maiden name, Martha Goodson. The Title Company, knowing her to be a married woman, refused to make the deed to her in her maiden name. This suit was instituted to regain possession from Martha after she refused either to close the deal at the Title Company, or to relinquish the possession she had taken on June 15, 1950.

Appellants disputed the above testimony of appellees. Martha testified that she put up the $500 as payment for a sewer line. But the jury evidently did not believe her testimony, for they found that she did not take possession of the property until June 15, 1950. This finding is in conflict with Martha's testimony as to prior possession, but it is consistent with appellees' testimony

as to the time when, and the circumstances under which Martha obtained possession.

As heretofore stated, according to appellants, three lots, Lots E, F, and G, were acquired through oral gift and by will from Annie D. Clark. Yet the undisputed testimony is that appellants bought Lot E from Comer Nelson in 1947. The deed is made out to Martha Goodson, though at the time Martha was married to Lester Dinwitty. Nelson had acquired his title through foreclosure on Frank Clark, who had mortgaged the lot to Nelson to secure a loan. Thus appellants' testimony that they had earlier acquired title to Lots E, F, and G by gift and devise, is inconsistent with their later purchase of Lot E from Nelson. Further, though title to Lot E is not involved here, we point out that in attacking the heirship of Frank Clark, appellants are in effect attacking their own title to Lot E by purchase.

From the above summary of the testimony, it will be seen that neither party was able to prove a regular chain of title. It is undisputed that appellees' claim of title came from Frank Clark (who apparently was not really an heir) through a deed in 1947 to Frederick Payne, and a deed dated March 1, 1950 from Payne to appellees. It is undisputed that appellees immediately started clearing the lot of weeds, rubbish, etc., and moved two houses on the property. The jury found that it was thereafter, on June 15, 1950, that appellants took possession. We recapitulate the above facts because we believe they are determinative of the conclusion which we have reached.

In our opinion the judgment of the trial court as to title and possession must be affirmed. Appellees as plaintiffs showed priority of possession. No title of any kind was found in appellants who were defendants. Therefore appellees as plaintiffs, by virtue of prior possession, are entitled to judgment.

We believe our conclusion is in accord with the holding of our Supreme Court in House v. Reavis, 89 Tex. 626, 35 S.W. 1063, 1064. We shall not recount the facts of that case in detail, but they are, in our opinion, sufficiently similar to the facts in the instant case to make the holding there controlling here. The Supreme Court, speaking of prior possession, said: "* * * *Such possession as was shown to have existed in the plaintiffs of the property in controversy is prima facie evidence of title in them, and was sufficient to entitle them to recover, against the defendants* * * *. * * * the title of every possessor of real estate whose chain of title was not perfect would be placed at the mercy of those who, either by force, fraud, or strategy, could secure the possession, and thus place the actual and rightful possessor upon proof of a regular chain of title from the government, and, in case of failure to do so, could defeat his right by simply showing that the title had passed out of the state without showing any claim of title in himself." (Emphasis supplied.) To the same general effect are the holdings in Katz v. Maddox, Tex.Civ.App., 256 S.W.2d 249; Lorino v. Crawford Packing Co., 142 Tex. 51, 175 S.W.2d 410; Perez v. Cook, Tex.Civ.App., 208 S.W. 668; Stuart v. Harper, Tex.Civ. App., 143 S.W. 712; Watkins v. Smith, 91 Tex. 589, 45 S.W. 560.

Appellants cite us to cases which hold that plaintiffs in a trespass to try title suit have the burden of proving title and cannot recover on a weakness in defendant's title. We are well aware of the legal principles which appellants seek to invoke. But in our opinion they are not applicable here. Under the holdings in House v. Reavis, supra, and other cited cases, prior possession by appellees, under the circumstances, was prima facie title. It was a stronger claim than the claim of appellants who were unable to establish any sort of title whatever, but were mere intruders. Consequently it cannot be said that appellees are recovering on the weakness of appellants' claim. Appellees' claim of title, weak though it may be, is definitely stronger than the claim of appellants.

Appellants complain because the trial court refused their oral request to send to the jury during their deliberations the judgment refusing probate of the purported will of Annie D. Clark. If the

**452**

court's refusal was error (we do not hold that it was), it was harmless error. Texas Employers Ins. Ass'n v. Applegate, Tex. Civ.App., 205 S.W.2d 412. It is undisputed that in a prior trial the instrument was refused probate on the ground that Annie D. Clark did not sign it. That fact, being thus already adjudicated against appellants, cannot be considered an issue in this case. We cannot see how appellants' cause was hurt by the court's action. On the other hand we can easily see how appellants' cause could have been hurt if the court had sent the judgment into the jury room.

Appellants also complain because of the allowance of a receiver's fee of $200. Benton C. Stailey had been appointed receiver March 16, 1953 and had collected about $880 in rents. Appellees did not make a bond as required by Rule 695-a T.R.C.P. By agreement of the parties the making of a bond by the receiver was waived.

■ We agree with appellants that it was mandatory for appellees to make bond, and the failure to require bond of them was error. Low Cost Homes Bldg. Co. v. Banks, Tex.Civ.App., 228 S.W.2d 535; Bell v. Bell, Tex.Civ.App., 204 S.W.2d 527.

Appellees suggest that if we sustain appellants' point as to the receiver's fee, we modify the court's judgment by providing for payment of the receiver's fee out of the rent money held by the receiver rather than taxing the fee as costs against appellants. As this rent money belongs to appellees, we see no objection to complying with their suggestion.

Appellants' eleventh and twelfth points on appeal are sustained; all others are overruled.

■ The judgment of the trial court is modified to the extent that the receiver's fee of $200 shall be paid out of the funds now held by the receiver, and shall not be taxed as costs or otherwise against appellants.

The judgment of the trial court as modified is affirmed.