**VOLUNTEER COUNCIL OF DENTON STATE SCHOOL, INC., Appellant,**

v.

**Murdine BERRY, Appellee.**

No. 05–89–00763–CV.

Court of Appeals of Texas, Dallas.

July 27, 1990.

Rehearing Denied Sept. 17, 1990.

Richard H. Kelsey, Denton, James W. Creech, Dallas, for appellant.

B. Prater Monning, III, Carol Wolfram, Dallas, for appellee.

Before HOWELL, LAGARDE and WHITTINGTON, JJ.

## OPINION

LAGARDE, Justice.

Volunteer Council of Denton State School, Inc. (Volunteer) appeals an instructed verdict awarding Murdine Berry (Berry) title and possession of eleven and one-half acres of land located in rural Dallas County, Texas.[1] The trial court based its instructed verdict in this trespass to try title suit on a finding that Berry had established her unabandoned prior possession of the land as a matter of law, while Volunteer had failed to establish by competent proof any claim of title. Additionally, the trial court based its verdict on a finding that Berry had proved a prima facie case of limitations title under the ten-year statute, which was likewise unrebutted. Volunteer advances seven points of error.[2] Points one through four and point six assert that, for various reasons, the trial court improperly granted the instructed verdict. Point five asserts that section 33.54 of the Texas Tax Code[3] precludes Berry's limitations

---

1. Berry was actually awarded title and possession to approximately 78 acres of land, but only 11.5 acres are the subject of this appeal.

2. Volunteer actually originally asserted eight points of error, but later conceded that the eighth point complaining of an incomplete record was mooted by the inclusion of plaintiff's exhibits 1 and 26 in the appellate record.

3. Tex.Tax Code Ann. § 33.54 (Vernon 1982), hereafter referred to as section 33.54.

claim as a matter of law. Point seven complains that the trial court erred in rendering its judgment based on prior unabandoned possession because Berry neither pleaded nor proved prior possession. By way of a cross-point, Berry asserts that the trial court abused its discretion in excluding her testimony as a discovery sanction. After examination of the applicable law and the evidence presented at trial, we affirm. Consequently, we do not address Berry's cross-point.

This case involves a dispute over title to an eleven and one-half-acre tract "smack in the middle" of an approximately seventy-eight-acre tract of land, known as "the Morney place." Berry, a descendant of Jim Morney, claims possession and title by limitations, and Volunteer claims record title derived through a tax deed dated July 6, 1976, and recorded July 29, 1976. In response to Berry's petition alleging trespass and damages, Volunteer pleaded "not guilty." Volunteer also filed a special plea in bar based on limitations pursuant to section 33.54 of the Tax Code. Consequently, we must address issues of the burden of proof in a trespass to try title case, adverse possession, and prior unabandoned possession.

## PRIOR POSSESSION

 Initially, we note that Volunteer complains that Berry may not assert a prior possession claim because Berry did not specifically plead this claim. We overrule this point of error because, in a trespass to try title case, it is not necessary to specifically plead prior possession. It is only necessary to specifically plead title by limitation. *Walsh v. Austin*, 590 S.W.2d 612, 614 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ dism'd w.o.j.). Though some cases refer to prior possession as a presumption, the doctrine of prior possession is not actually a legal presumption. Instead, prior possession stands as an evidentiary rule which states that one in possession of the property is the presumptive owner unless the challenger proves a superior right. *Id.; Phillips v. Wertz*, 546 S.W.2d 902, 905 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). Prior possession indicates ownership interest against one who has failed to establish a paper title to the property. *Walsh*, 590 S.W.2d at 614. The doctrine is an independent ground of recovery designed to maintain the public order by insuring that possession may continue absent a showing of better title. *Phillips*, 546 S.W.2d at 905. Prior possession, a form of adverse possession, does not require a claim of legal title, and possession alone will exclude one having no title. *Id.* at 906. Though a party fails to establish title by limitation, the court may still render judgment in that party's favor by reason of prior possession when the opponent fails to prove better title. *Walsh*, 590 S.W.2d at 614.

Berry, plaintiff at the trial level, filed her trespass to try title case against various defendants on July 16, 1985, specifically pleading title by limitation. The trial court directed a verdict in her favor, and awarded her title to eighty acres of land in Dallas County.[4] Only Volunteer appeals the judgment, contesting Berry's title to tract 3, an eleven and one-half acre section.

 In any trespass to try title case, the plaintiff must recover on the strength of its own title, not a weakness in its opponent's claim. *See Land v. Turner*, 377 S.W.2d 181, 183 (Tex.1964); *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex.Civ.App.—Corpus Christi 1978, no writ). The plaintiff may recover on a trespass to try title claim through several methods of proof, one of which is a showing of prior and unabandoned possession. *Land*, 377 S.W.2d at 183. The possession must be actual, exclusive, and peaceable.[5] *Id.* at 186. Once the

---

4. The evidence indicated that Berry's family had actually farmed the entire acreage for three generations. No evidence showed anyone other than the Berry family living on the eighty acres.

5. Volunteer lists the elements of a prior possession claim and cites three cases which purport to hold that possession must also be held under a regular chain of title. These cases are: *Walsh*, 590 S.W.2d at 614; *Massey v. Lewis*, 281 S.W.2d 471, 477 (Tex.Civ.App.—Texarkana 1955, writ ref'd n.r.e.); and *Dean v. Grogan–Cochran Lumber Co.*, 58 S.W.2d 552, 553 (Tex.Civ.App.—Beaumont 1933, no writ). We have examined

plaintiff shows the requisite possession, that showing furnishes prima facie evidence of ownership, and, unless the defendant rebuts this evidence, it counts as sufficient against a trespasser. *Id.* The prima facie showing actually shifts the burden of persuasion to the defendant to show that the plaintiff's prior possession claim is inferior to the defendant's. *Rocha,* 574 S.W.2d at 237. While adverse possession entails a factual inquiry, the court can decide the issue as a matter of law when the facts are undisputed and uncontradicted. *See Rocha,* 574 S.W.2d at 236 (boundary dispute); *Harvey v. Peters,* 227 S.W.2d 867, 872 (Tex. Civ.App.—Fort Worth 1950, no writ); *compare* 61 Tex.Jur.3d *Quieting Title And Determining Adverse Claims* § 65 (1988). For example, when the plaintiff establishes a prima facie case, the defendant must introduce evidence raising a material issue of fact if it wishes to avoid a summary judgment or a verdict directed in the plaintiff's favor. *Walsh,* 590 S.W.2d at 616.

In this case, the trial court instructed a verdict in Berry's favor on her claim of prior unabandoned possession, and Volunteer assigned several points to this perceived erroneous ruling. Essentially, Volunteer argues that Berry did not conclusively establish prior possession and that contested fact issues exist. On these two bases, Volunteer alleges that Berry did not prove her right to possession and title as a matter of law.[6] Volunteer states that because Berry failed to establish her right of possession as a matter of law, Volunteer should have had the verdict instructed in its favor.[7]

■ In addressing these points of error, we are mindful of the standard of review for instructed verdicts. At the trial level, a party is entitled to an instructed verdict when reasonable persons may draw only one inference from the evidence. *See Dabney v. Thomas,* 596 S.W.2d 561, 562 (Tex. Civ.App.—Beaumont 1980, writ ref'd n.r. e.). The appellate court reviews the evidence presented at trial to determine whether it raises a fact issue on the material questions presented. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978). When making this determination, the appellate court considers all the evidence in the light most favorable to the party against whom the trial court instructed the verdict, and discards all contrary evidence and inferences. *Id.* If the appellate court concludes that reasonable minds can differ on the existence of controlling facts, then the jury, and not the court, must decide the issue. *Id.*

In reviewing the case at hand on the issue of prior possession, we will first examine the record to determine whether Berry established a prima facie case. If we conclude Berry established a prima facie case, then we must determine whether Volunteer presented evidence raising a material question of fact on the existence of this prima facie case. Because Volunteer bases its claim to the property on a tax deed, we will discuss the affirmative bar by limitations defense advanced by Volunteer when we discuss the validity of the tax deed as it pertains to material issues of fact.

### Berry's Prior Possession Evidence

The record reflects that when Berry took the stand, Volunteer moved that the trial court limit her testimony, making it inadmissible against Volunteer as a sanction for failing to designate herself as a potential witness in response to Volunteer's interrogatories. The trial court granted Volunteer's request for a limitation of the

---

these cases and find that appellant has misread their holdings. The claimant need not hold under a regular chain of title and these cases do not hold otherwise.

**6.** Volunteer claims that the trial court instructed in Berry's favor solely because she established a prima facie case, asserting that the court confused a prima facie case with a case established as a matter of law. These contentions are incorrect. As we will explain, Berry's *uncontro-*

*verted* prima facie prior unabandoned possession established her right to tract 3 as a matter of law. *See Walsh,* 590 S.W.2d at 616.

**7.** Volunteer makes the same complaints regarding the instructed verdict on Berry's adverse possession claim; however, we address this issue separately in the latter portion of this opinion.

evidence under rules 166b(2)(d) and 215(3) of the Texas Rules of Civil Procedure.[8] The record and the briefs of the parties discuss at length the propriety of limiting the admissibility of Berry's testimony. Volunteer asserts that the trial court limited the entirety of Berry's testimony. Berry disputes the correctness of the ruling, by way of a cross-point, and appears to argue that the limitation went both to her live and deposition testimony. We have examined the record and, because of its lack of clarity as to its limitation, we will set out our reasoning and conclusions in some detail. This analysis and examination is necessary so that we can determine what evidence was before the trial court at the time it directed the verdict in Berry's favor.

Our research has disclosed no instances of a named party being prevented from testifying as a *fact* witness under rule 215 discovery sanctions. However, case law repeatedly states that the failure to comply with a request for witness information results in an automatic loss of opportunity to offer that undisclosed witness's testimony. *Galvin v. Gulf Oil Corp.*, 759 S.W.2d 167, 170 (Tex.App.—Dallas 1988, writ denied). These sanctions are designed to prevent trial by ambush and to promote fairness and a full knowledge of the issues. *Gutierrez v. Dallas Indep. School Dist.*, 729 S.W.2d 691, 693 (Tex.1987). At least one court has disallowed an undesignated party to testify as an *expert* witness on his own behalf. *Tinkle v. Henderson*, 777 S.W.2d 537, 539 (Tex.App.—Tyler 1989, writ denied). Although Volunteer could have expected Berry to testify on her own behalf, case law has firmly established that the opponent's lack of surprise alone does not allow the proponent to place the witness on the stand. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986). Even important and crucial testimony will not be permitted from an undesignated witness. *See Clark v. Trailways, Inc.*, 774 S.W.2d 644, 646 (Tex.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1122, 107 L.Ed.2d 1028 (1990). We assume, without deciding, that the trial court correctly limited Berry's *live* testimo-

ny offered at trial on her own behalf; however, we do not construe the limitation as extending to Berry's *deposition* testimony, offered by another defendant at trial.

■ During the defendants' case-in-chief, defendants Swidler and Biesel read extensively from Berry's deposition previously given to Volunteer. At no time did Volunteer object to the reading of the deposition, nor did Volunteer request a limiting instruction. Berry's attorney requested that the trial court instruct the jury that it could consider this deposition testimony adversely to Volunteer, but the court declined to so instruct the jury. Our study of the applicable case law concerning the import of Berry's deposition leads us to conclude that the deposition testimony was not limited and, therefore, is admissible for all purposes.

Because of Berry's violation of the discovery requests, the trial court limited Berry's live testimony, instructing the jury that they could not consider it against Volunteer. In contrast, Berry's deposition testimony was offered by other defendants, and Volunteer raised no issue of discovery abuse in connection with these defendants. In *Baluch v. O'Donnell,* 763 S.W.2d 8, 10 (Tex.App.—Dallas 1988, orig. proceeding), this Court set out a detailed list of the goals that discovery sanctions strive to achieve. *Baluch* states that sanctions promote compliance with discovery rules; deter violations of the rules; and punish rule violators. *Id.* None of these purposes are furthered when the trial court imposes a sanction against a party who has not offered the evidence. *Cf. id.*

Furthermore, the record shows that Volunteer did not request that the trial court impose sanctions or a limitation of the deposition testimony. Even if we assume that the deposition was of limited competence, Volunteer failed to ask the court to limit the use of the deposition testimony by making a timely objection or motion when the other defendant first began to read from

---

**8.** Tex.R.Civ.P. 166b(2)(d) and 215(3).

Berry's deposition. *See Handel v. Long Trusts*, 757 S.W.2d 848, 850 (Tex.App.— Texarkana 1988, no writ) (similar fact situation). We observe that Volunteer's limitation request during Berry's case-in-chief cannot serve double duty as a timely request for limitation during the defendants' case-in-chief. The Texas Supreme Court recently addressed this area of procedural law in *Clark*, 774 S.W.2d at 647. In that case, the appellants argued that the appellee's witness should not have been allowed to testify because the appellee had failed to designate him as a witness. The Texas Supreme Court concluded that the trial court could have imposed sanctions, but that the appellants had waived their complaint by failing to object at trial. *Id.* The reviewing court held that the appellants' pretrial motion for sanctions did not preserve error. *Id.* Similarly, we hold that Volunteer's previously granted limitation on Berry's live testimony did not extend to the defendants' offering of Berry's deposition testimony.

Although the trial court denied Berry's request that the court specifically instruct the jury that Berry's deposition could be considered against Volunteer, we do not construe this denial as an affirmative limitation instruction. The record does not reflect a specific limitation instruction and we refuse to imply one, especially in light of case law that holds that a trial court commits an abuse of discretion if it sua sponte issues sanctions or limitations. *Baluch*, 763 S.W.2d at 10–11; *Motley v. Mielsch*, 214 S.W.2d 671, 674 (Tex.Civ.App.—Galveston 1948, no writ).

Because Volunteer did not ask the trial court to limit the deposition testimony, we will consider it as admissible for all purposes in support of the judgment. *Scotchcraft Bldg. Materials, Inc. v. Parker*, 618 S.W.2d 835, 837 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Kaplan v. Goodfried*, 497 S.W.2d 101, 104 (Tex.Civ. App.—Dallas 1973, no writ). Having determined that Berry's deposition testimony was admissible for all purposes, we will now examine the record to see whether it establishes Berry's prima facie prior possession of tract 3.

Through her deposition, Berry testified that she took possession of the entire eighty acres in the mid–1970s. She agreed that witness Zeffer Hull testified correctly when he stated that he repaired fences on the property in 1976 or 1977. At that time, Berry raised hay and ran hogs on tract 3, which was not at that time, and is not now, separately fenced from other tracts. In the 1980s, Berry also grazed her cattle on the tract but could not recall when she first began doing this. The cattle were not confined to tract 3, but wandered throughout the entire acreage. She cleared tract 3 of trees and debris in 1977, and she built more fences in 1982 and 1983.

Other witnesses also gave testimony concerning tract 3. Larry Hardeman, who also claimed an interest in the eighty acres, said that he saw several head of cattle on tracts 2, 3, and 4 in 1986. Sue Ramsey, Volunteer's executive director, testified that she saw tract 3 in 1984 and that it appeared undeveloped at that time, although it may have had an abandoned structure on it. She testified that Volunteer has never used the property.

Paul Calvin, a longtime area resident, testified that he saw cattle on the tract in the 1980s, and that someone had rebuilt the front fence in 1976 or 1977. He had seen hog pens on tract 3 and recently someone had moved a house onto this tract. On cross-examination, he testified that tract 3 has rocky soil that will not support the grazing of a lot of cattle.

John L. Dawson, Sr. testified that before he bought the acreage at a tax sale, he looked at the tract. He saw no signs of development. John Thompkins, a Volunteer board member, said that he had seen the tract on two separate occasions in 1984. Neither time did he see any evidence of development or cultivation. On cross-examination he indicated that a gate and a fence were on the side closest to the highway.

Zeffer Hull testified that he rented land from Berry and built fences for her. He stated that Berry showed him the boundary of the property, and he fenced the entire

acreage. He could not say with certainty how many acres he fenced, but it was close to fifty and certainly more than eleven acres.

■ Although the evidence presented falls short of overwhelming, it does show that Berry actually, exclusively, and peaceably possessed tract 3. Berry identified the tract by referring to it as the eleven and one-half acres claimed by Volunteer through the Dawson deed. When Dawson took the stand, he identified the land he bought as tract 3, referring to plaintiff's exhibit one.[9] All parties stipulated that this exhibit depicted the property in dispute; one section of this diagram is numbered "3." We hold that this evidence sufficiently and specifically identified the tract in question. *See Stafford v. Jackson*, 687 S.W.2d 784, 787 (Tex.App.—Houston [14th Dist.] 1985, no writ); *Benavides v. Steward*, 655 S.W.2d 298, 300 (Tex.App.—Corpus Christi 1983, no writ).

■ Berry also sufficiently proved her prior unabandoned possession of the tract. She testified that she grazed cattle and grew hay on the tract. She enclosed the entire property, including tract 3, with a fence. She improved the tract by clearing it. The record contains no suggestion that anyone other than Berry or her predecessors-in-interest asserted possession, and Volunteer admits that it never made use of the tract. This evidence establishes Berry's actual and peaceable possession. *See Stafford*, 687 S.W.2d at 787–88 (clearing the land, grazing cattle, and deliberate enclosure can show possession and adverse use). The only reasonable inference that can be drawn from this evidence is that Berry has been in possession of tract 3 at least since the mid–1970s when she had the fences repaired; therefore, she established a prima facie possession claim. Having established a prima facie claim of possession, the burden of persuasion shifted to

Volunteer to establish that Berry's prior possession claim was inferior to its own.

### Volunteer's Tax Deed

■ We first address Volunteer's contention that it should have had a verdict instructed in its favor because the applicable statute of limitations precluded Berry's claim as a matter of law. The record shows that the sheriff of Dallas County sold the tract in question on July 6, 1976, to John L. Dawson, Sr. and John L. Dawson, Jr. to pay for taxes owing on the property. This deed shows that it was recorded on July 29, 1976. The Dawsons later deeded this tract to Volunteer by a quit claim deed. Volunteer bases its statute of limitations argument on section 33.54(a) of the Texas Tax Code [10] which reads, in pertinent part:

### Limitation on Actions Relating to Property Sold for Taxes

(a) [A] cause of action relating to the title to property may not be maintained against the purchaser of the property at a tax sale unless the action commences within three years after the deed executed to the purchaser at the tax sale is filed of record.

. . . .

(c) When actions are barred by this section, the purchaser at the tax sale or his successor in interest shall be held to have full title to the property, precluding all other claims.

Berry did not file her suit against Volunteer until July 16, 1985, more than eight years after the Dawsons recorded the tax deed. Volunteer asserts that, by the plain wording of section 33.54, Volunteer, as the Dawsons' successor-in-interest, has full title to tract 3. Only one case, *Cook v. Slusky*, 659 S.W.2d 110, 111–12 (Tex.App.—Houston [14th Dist.] 1983, no writ),[11] has construed the limitations aspect of the section. In *Cook*, the plaintiff asserted his right and title to some property by way of

---

9. ˙Plaintiff's Exhibit One appears as an Appendix to this opinion.

10. Tex.Tax Code Ann. § 33.54(a) (Vernon 1982).

11. *Cook v. Slusky* was decided under article 7345b–3 of the Texas Revised Civil Statutes, predecessor to section 33.54, which also had a three-year statute of limitations running from the date of recordation.

a tax deed. The defendant argued that the tax deed did not affirmatively establish the plaintiff's title to the property. The Houston appellate court noted that the defendant (appellant) had not challenged the tax deed within the three-year limitations period. *Id.* at 112. Thus, the plaintiff (appellee) had established title and possession to the property based on the tax deed. *Id.* In this same suit, another defendant did challenge the deed within three years of recordation. *Id.* This party was entitled to insist that the plaintiff prove its trespass to try title action. *Id.* The opinion in *Cook* does not disclose whether the tax deed proponent introduced into evidence any documents other than the tax deed. The appellate court did note that *Cook* was probably a case of first impression in construing section 33.54. Our research concerning the present controversy has not disclosed any other cases construing the section; furthermore, *Cook* has not been cited as authority in any other decisions.

Our examination of the exhibits filed in this case discloses that Volunteer introduced the Dawson deed and its own deed; however, Volunteer did not introduce the tax judgment or the order of sale authorizing the sheriff to make the sale. Texas case law has long held that the party relying on a tax title has the burden of proving the validity of that title. *Nagel v. Taylor,* 275 S.W.2d 561, 562 (Tex.Civ.App.—San Antonio 1955, writ dism'd w.o.j.). The taxing entity conducts tax sales pursuant to statutes, and the proponent of a tax deed must show that the sale complied with the applicable statutory conditions. *Wright v. Vernon Compress Co.,* 156 Tex. 474, 478, 296 S.W.2d 517, 520 (1956). The proponent must also show that the tax collector had the authority to sell the property. *Id.* The Texas Supreme Court has held that, absent this proper showing, a tax deed does not affect title. In the present case, the Dawson deed mentions a judgment and a foreclosure which directs the sheriff to sell the property; however, this recital does not meet Volunteer's burden of proof. The recitals in the tax deed, by themselves, do not conclusively establish compliance with

the conditions precedent to a lawful sale. *Id.; Stark v. Stefka,* 491 S.W.2d 757, 759 (Tex.Civ.App.—Austin 1973, no writ). Previous discussions concerning the burden of proof have been uniform: in order to prove title under a tax deed, the proponent must introduce into evidence the decree of foreclosure and the order of sale. *Nagel,* 275 S.W.2d at 562; *see Wright,* 296 S.W.2d at 520; *Stark,* 491 S.W.2d at 759; *Bavousett v. Bradshaw,* 332 S.W.2d 155, 158 (Tex.Civ. App.—Amarillo 1959, writ ref'd n.r.e.); *Lindley v. Mowell,* 232 S.W.2d 256, 259–60 (Tex.Civ.App.—Eastland 1950, writ ref'd n.r.e.). Absent an order of sale, a tax deed does not prove valid legal title. *See Bavousett,* 332 S.W.2d at 158. The order of sale and the decree establish the sheriff's authority to sell the property and, absent this authority, no title passes. *Nagel,* 275 S.W.2d at 562.

The predecessor to section 33.54 [12] indicates that a party relying on the three-year statute of limitations must still show a lawful sale in order to establish the defense. Subsection (a) reads:

No cause of action or defense may be asserted or maintained on a claim respecting any land sold for delinquent taxes at a tax sale *pursuant to a judicial foreclosure of a tax lien,* unless the cause of action or defense is asserted in an action commenced within three years after the filing of record of the deed executed to the purchaser at the tax sale.

(Emphasis added). Although our research has disclosed no cases interpreting the proof requirements, given the plain wording of the subsection, we fail to understand how the deed proponent could avail himself of this statutory protection without offering proof that the sale was preceded by a judicial foreclosure. In any event, the italicized language was dropped when the legislature recodified article 7345b–3(a) in section 33.54 of the new Tax Code.

We must determine what documents the tax deed proponent must introduce under the present law to take advantage of the three-year statute of limitations. We must

---

**12.** Tex.Rev.Civ.Stat.Ann. art. 7345b–3(a) (Vernon 1960).

determine whether the proponent need only introduce a recorded tax deed or whether the proponent must also introduce those documents that prove that the tax deed is valid. In order to make this determination, we will first examine other sections of the Tax Code in order to supply a context for the limitations section. With that context in mind, we will then apply basic statutory construction rules to section 33.54.

### (a) *Validity of a Tax Deed*

Appellant argues that the tax deed constitutes sufficient evidence under the present law to assert the statutory limitations bar, and cites section 34.01(d) of the Tax Code. The present version of the statute reads:

**Sale of Property**

(d) The officer making the sale shall prepare a deed to the purchaser of real property at the sale or to any other person whom the purchaser may specify. The deed vests good and perfect title in the purchaser or his assigns to the interest owned by the defendant in the property subject to the foreclosure, subject to the defendant's right of redemption. The deed may be impeached only for fraud.

TEX.TAX CODE ANN. § 34.01(d) (Vernon 1982).

Though recently amended, section 34.01(d) has not changed significantly from the earlier version. The newest version of section 34.01(d) has not been interpreted by any court, but the Texas Supreme Court has addressed a prior version in the *Wright* case. As previously discussed, the Court held that the tax deed proponent must demonstrate that the seller had authority to dispose of the property and that the seller complied with applicable statutory provisions. *Wright*, 296 S.W.2d at 520. This proof is necessary regardless of constitutional or statutory law. *Id.* The Court cited article 8, section 13 of the Texas Constitution which, like section 34.01(d), vests good and perfect title in the purchaser of property sold for taxes, subject only to impeachment for fraud. *Id.* The Court stated that this constitutional provision "only states the effect of the deed when the law has been complied with—it dispenses with no proof." *Id.*[13] Based on our study of the prior and present versions of section 34.01(d), we conclude that Volunteer errs when it asserts that this section dispenses with requirements other than a recorded deed. On the contrary, the requirements for proof of a valid deed seem unchanged from those required in the early *Earle* and *Wright* cases. These cases and their applicable statutes required documentation of the sheriff's authority to sell the property. Although the statute applied in those cases, and presently denominated as section 34.01(d), has undergone changes, we find no indication that the changes abrogated the previous requirements. The legislature has re-enacted this section several times since *Wright*, without making any substantial changes. It is a well established rule that when the legislature re-enacts a statute without significant change, it is presumed that the lawmakers knew of and adopted the existing interpretation. *Coastal Indus. Water Auth. v. Trinity Portland*, 563 S.W.2d 916, 918 (Tex.1978). In such cases, the new statute will continue to receive the same construction. *Texas Employers' Ins. Ass'n v. Perez*, 673 S.W.2d 669, 672 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Our study of section 34.01(d) leads us to the conclusion that *Wright* still stands as good law. The benefit afforded by the section only comes into play when the deed proponent has complied with the law; it does not dispense with the need to prove compliance. Under this section, the proponent shows compliance by introducing the tax judgment and the order of sale. Section 34.01(d) provides no support for appellant's argument.

### (b) *Limitations Under Section 33.54*

 Basic rules of statutory construction provide guidance in determining the

---

**13.** The *Wright* Court traced the constitutional provision through its various statutory incarnations, from TEX.REV.CIV.STAT.ANN. art. 518 (1895) (repealed 1946) to TEX.REV.CIV.STAT.ANN. art. 1059 (1911) (repealed 1978). *Wright*, 296 S.W.2d at 520–22 (citing *Earle v. City of Henrietta*, 91 Tex. 301, 43 S.W. 15 (1897)). Our own study shows that article 1059 is prior law for the current section 34.01(d).

prerequisites to invoking section 33.54 limitations protection. The dominant and fundamental aim of statutory construction is to give effect to the legislative intent. *City of West Tawakoni v. Williams*, 742 S.W.2d 489, 491 (Tex.App.—Dallas 1987, writ denied); *Carroll v. Bullock*, 530 S.W.2d 135, 137 (Tex.Civ.App.—Austin 1975, no writ). A court may determine this intent by examining the language of the statute and its legislative history. *City of West Tawakoni*, 742 S.W.2d at 491. The court must ascertain the intent from a study of the entire act, and the court cannot assign to the statute a meaning that conflicts with other provisions if it is reasonable and possible to harmonize them. *Everett v. United States Fire Ins. Co.*, 653 S.W.2d 948, 950 (Tex.App.—Fort Worth 1983, no writ); *Carr v. Hunt*, 651 S.W.2d 875, 881 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). The court's goal and duty is to give the intended legislative effect to each statute. *Everett*, 653 S.W.2d at 950.

■ Consequences following from possible construction stand as another factor bearing on the determination of legislative intent. *Hunt v. Heaton*, 631 S.W.2d 549, 550 (Tex.App.—Beaumont), *aff'd*, 643 S.W.2d 677 (Tex.1982). Courts should not interpret a statute in a way that leads to a foolish result. *City of West Tawakoni*, 742 S.W.2d at 491. Interpretations that render the rules ineffective are not favored. *Hunt*, 631 S.W.2d at 550–51. Amendments also play a part in statutory construction. As previously noted, the legislature has recently amended section 33.-54. When the legislature amends a rule, the courts presume that the lawmakers knew of decisions construing the former versions. *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex.1984). When the legislature enacts the new rule with only slight, non-substantive variations, courts presume that the legislature has consented to the continued application of those court decisions. *See id.*

■ With these guidelines in mind, we turn our attention to section 33.54. A former version of this section contained language which indicated that a tax deed proponent needed to show the sheriff's authority to sell before proving a valid deed. This language is missing from the present statute, requiring us to decide whether this change in language signifies a substantive change in proof requirements. Aiding us in this determination is our previous conclusion that another section of the Tax Code, section 34.01, still requires documentation of the sheriff's authority before title vests under a tax deed. Section 34.01 and section 33.54, governing limitations, must be construed together to determine legislative intent; furthermore, we must search for a reasonable and harmonious construction of the sections. It would be absurd and inconsistent to say that section 34.01 requires documentation of authority, but that a deed holder can simply wait three years after recordation, present only the deed, and then claim the limitations protection due only to a valid deed under section 34.01. As a result, we hold that in order to invoke limitations protection, a party must produce the same documentation that proves a valid tax deed. To hold otherwise would extend the protection of limitations to an invalid or void deed that conveys no title.

Because Volunteer did not introduce a valid tax deed under section 34.01, Volunteer cannot take advantage of the three-year statute of limitations provided by section 33.54.[14] Further, as a matter of law, Volunteer did not produce evidence that showed any legal entitlement or right to the property. The Texas Supreme Court has unequivocally stated that, absent a show of authority, a tax deed "does not affect title." *Wright*, 296 S.W.2d at 520.

■ In any trespass to try title suit, the plaintiff has the burden of establishing a title superior to that of the defendant.

---

**14.** Volunteer attempts to dodge the effect of the void tax deed by pointing out that it claims title under the Dawson deed, which is not a tax deed. The Dawsons acquired their interest in tract 3 through a tax deed, and section 34.01(d), which governs valid tax deed title, applies to the purchaser and his assigns. The Dawson deed does not exempt Volunteer, Dawson's grantee, from the benefits or the inconveniences of section 34.01(d).

Should the plaintiff fail, the effect of a take-nothing judgment against the plaintiff is to vest title in the defendant. *Gillum v. Temple*, 546 S.W.2d 361, 364 (Tex.Civ.App. —Corpus Christi 1976, writ ref'd n.r.e.). Berry has made an uncontroverted showing of prior unabandoned possession of tract 3, but Volunteer has made absolutely no showing of legal entitlement. In these circumstances, we hold that, as a matter of law, Berry has established her ownership on the relative strength of her own title. *See Dinwitty v. McLemore*, 291 S.W.2d 448, 451 (Tex.Civ.App.—Dallas 1956, no writ). We overrule all of Volunteer's points addressing Berry's prior possession. We hold that the trial court correctly instructed the verdict in Berry's favor on her prior possession claim.

Adverse Possession and Limitations Title

Volunteer asserts that the trial court erroneously directed a verdict for Berry on her claim of title through her ten years of adverse possession. Volunteer argues that Berry did not establish limitations title as a matter of law; that contested fact issues exist on this subject; and that Berry failed to make a prima facie limitations case. A trespass to try title action is a proceeding whereby the court resolves competing claims of title or rights of possession. *Yoast v. Yoast*, 649 S.W.2d 289, 292 (Tex. 1983). The party asserting a limitations action must recover on the strength of his own title, and not a weakness in his opponent's claim. *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Through her prior unabandoned possession, Berry established her right to possession and title to tract 3. Case law has consistently construed a tax deed, lacking in further documentation, as having no effect on title ownership of land. Thus, Volunteer failed in its proof of a superior title; indeed, it presented no competent evidence of a competing claim. Consequently, it is not necessary to address Volunteer's complaint concerning adverse possession through limitations title. The judgment is affirmed on the basis of prior unabandoned possession.