

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-18-00450-CV

Velma **SAN MIGUEL** and Alexis Rendon,
Appellants

v.

**PLAINSCAPITAL BANK**, Trustee of the Guerra Mineral Trust,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-16-19
Honorable Everardo Garcia, Judge Presiding

Opinion by: Rebeca C. Martinez, Justice
Dissenting Opinion by: Patricia O. Alvarez, Justice

Sitting: Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: July 10, 2019

To reverse the trial court's judgment, the majority rejects each of the grounds in the Bank's

motion for summary judgment, including the Bank's theory of title by prior possession. But the

Bank presented prima facie evidence of prior possession, and nothing in San Miguel's summary

judgment proof raises a fact question on her ownership of the mineral interest at issue. Thus, the

Bank was entitled to summary judgment and I would affirm the trial court's judgment. Because

the majority decides otherwise, I respectfully dissent.

## TITLE BY PRIOR POSSESSION

In this case, where "the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *accord Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). The Bank moved for summary judgment on four grounds, but because a single meritorious ground is sufficient for this court to affirm the trial court's judgment, *Lightning Oil Co.*, 520 S.W.3d at 45, I will address only the Bank's theory of title by prior possession.

### A.      Applicable Law

"The plaintiff may recover on a trespass to try title claim through several methods of proof, one of which is a showing of prior and unabandoned possession." *Volunteer Council of Denton State Sch., Inc. v. Berry*, 795 S.W.2d 230, 233 (Tex. App.—Dallas 1990, writ denied) (citing *Land v. Turner*, 377 S.W.2d 181, 183 (Tex. 1964) (stating that a plaintiff may recover in a trespass-to-try-title action "by proving prior possession, and that the possession had not been abandoned").

"[T]o establish 'prior possession,' there must be an actual possession of the property which is exclusive, and peaceable." *Land*, 377 S.W.2d at 186; *accord Berry*, 795 S.W.2d at 233; *Walsh v. Austin*, 590 S.W.2d 612, 614 (Tex. App.—Houston [1st Dist.] 1979, writ dism'd) ("To invoke the rule of prior possession, there must appear prior possession, exclusive dominion and the absence of a superior title in the opposing party.").

"Actual possession to satisfy requirements of prior possession may be through agents or tenants." *Walsh*, 590 S.W.2d at 615. "[A]n exclusive and peaceable possession of land furnishes prima facie evidence of ownership." *Land*, 377 S.W.2d at 186 (quoting *Pac. Exp. Co. v. Dunn*, 16 S.W. 792, 792 (Tex. 1891)); *accord House v. Reavis*, 35 S.W. 1063, 1064 (Tex. 1896) (determining

that the plaintiffs' "possession of the land in controversy under a claim of title . . . [was] prima facie evidence of title in [the plaintiffs]").

"The prima facie showing actually shifts the burden of persuasion to the defendant to show that the plaintiff's prior possession claim is inferior to the defendant's." *Berry*, 795 S.W.2d at 234; *accord Walsh*, 590 S.W.2d at 615–16. "[W]hen the plaintiff establishes a prima facie case, the defendant must introduce evidence raising a material issue of fact if it wishes to avoid a summary judgment . . . in the plaintiff's favor." *Berry*, 795 S.W.2d at 234; *accord Walsh*, 590 S.W.2d at 616.

## B. Bank's Evidence of Prior Possession

To be entitled to summary judgment, the Bank had to prove a prima facie case of prior possession. *See Berry*, 795 S.W.2d at 233; *Walsh*, 590 S.W.2d at 614. The Bank submitted affidavits from William Thomas Guerra Sr. and Bill Douglas Pope Sr.

### 1. W.T. Guerra Sr.'s Affidavit

In his affidavit, W.T. Guerra Sr. began by stating "I have personal knowledge of the facts stated herein." He continued and testified to the following facts.

The land described in the 1956 deed, which includes the 781.11 acres at issue, is known to his family as the Los Barrosos Pasture. It was completely fenced in on three sides and partially fenced in on the fourth side.

His family did not live on the property but they "were there continuously throughout each year from 1932 (or at least 1948) until 1969." They hunted on the property; "controlled, used, and occupied the Property for raising cattle"; built stock pens and stock tanks on the property; and built a cabin on the property where one or more of their ranch hands lived full-time.

His family continuously paid taxes on the property before they claimed title by prior possession, and no one else, including San Miguel or Rendon, have ever "occupied, used, or possessed the Property." Before the instant lawsuit, none of the defendants ever challenged his family's ownership of the property.

2.    *Majority's Criticisms of Guerra's Affidavit*

a.    Lack of Specificity

The majority first criticizes W.T. Guerra Sr.'s affidavit because he "does not attest to whether the use and cultivation of the property occurred specifically on the 781.11-acre tract," but his testimony is prima facie evidence of prior possession of the *entire* Los Barrosos Pasture, within which the 787.11-acre tract is wholly contained.

b.    Personal Knowledge

The majority also criticizes W.T. Guerra Sr.'s use of "to the best of my knowledge" in three of his twenty-four statements in his affidavit. An affidavit is required to be based on personal knowledge, *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam) (citing TEX. R. CIV. P. 166a(f)), and W.T. Guerra Sr. swears that he has "personal knowledge of the facts stated herein." "The inclusion of the phrase 'to the best of my knowledge' does not negate [W.T. Guerra Sr.'s] earlier assertion that the affidavit was based on [his] personal knowledge." *See Taylor v. Discover Bank*, No. 03-17-00677-CV, 2018 WL 4016611, at *1 (Tex. App.—Austin Aug. 23, 2018, no pet.) (mem. op.) (citing *Ermisch v. HSBC Bank USA*, No. 03-16-00080-CV, 2016 WL 6575232, at *3 (Tex. App.—Austin Nov. 4, 2016, pet. denied) (mem. op.)).

In only one of twenty-four paragraphs of his affidavit, and with reference to only the ten-year period before he was born, W.T. Guerra Sr. testified that his "belief [that his grandfather initially claimed Los Barrosos Pasture in 1932] is based upon multiple statements made to me

during my childhood . . . and upon my understanding of the Guerra family history." To the degree that W.T. Guerra Sr.'s statements about that ten-year period were based on his *belief* and not his personal knowledge, they were legally insufficient. *See Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008).

But in every other paragraph, W.T. Guerra Sr. testifies to facts based on his personal *knowledge*—which is sufficient. *See id.*; *Ryland Grp.*, 924 S.W.2d at 122.

W.T. Guerra Sr.'s affidavit stated specific facts within his personal knowledge—which comprised prima facie evidence of prior possession. *See Berry*, 795 S.W.2d at 234; *Walsh*, 590 S.W.2d at 616.

c.        *Mortgage Land & Investment Co. v. Spears*

The majority also criticizes W.T. Guerra Sr.'s affidavit using *Spears*'s proposition that "the testimony of one witness was not sufficient to prove actual possession as a matter of law," but *Spears*'s facts are dramatically different. *See Mortg. Land & Inv. Co. v. Spears*, 162 S.W.2d 1015 (Tex. App.—San Antonio 1942, writ ref'd w.o.m.).

In *Spears*, the *only* evidence of prior possession was from a single witness—a ranch hand—whose "testimony [was] very brief." *Id.* at 1016. *Spears* concluded the evidence did not establish prior possession as a matter of law because of "the meagerness of the testimony [about] the location and nature of the fence mentioned by the [only] witness" and the fact that "the witness' knowledge of the nature of the Pasture Company's possession from 1909 to 1926 is based on nothing more than the fact that he passed through the pasture since 1909." *Id. at* 1017.

A single ranch hand's testimony about passing through an area sometime during a seventeen-year period is not even a shadow of the evidence in W.T. Guerra Sr.'s affidavit—which is supplemented by, inter alia, the 1956 deed and B.D. Pope Sr.'s affidavit.

### 3.    *B.D. Pope Sr.'s Affidavit*

In his affidavit. B.D. Pope Sr. testified he was born and raised in Starr County, and he lived most of his adult life there.  When he visited the adjoining ranch, he saw the Guerras' cattle—identifiable by their distinctive brand—on the property, he saw the Guerras' vaqueros herding and running the cattle on the property, the Guerras' vaqueros were on the "Guerra property quite often, and [they] were frequently there whenever I would visit the [adjoining] ranch."  Pope also testified that in the 1960s, he helped his father, an attorney, to "compile an inventory of all of the Guerra family lands held under fence," and he was familiar with who owned the property at issue in this case.

### 4.    *Hearsay Objections to Affidavits*

San Miguel filed written objections to both affidavits as containing hearsay, but she did not obtain a ruling from the trial court on her objections.  Her hearsay objections are waived for purposes of appellate review.  *See Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 498 (Tex. App.—Fort Worth 2002, no pet.) (citing *Harris By & Through Harris v. Spires Council of Co-Owners*, 981 S.W.2d 892, 897 (Tex. App.—Houston [1st Dist.] 1998, no pet.)).

Assuming without deciding that San Miguel's hearsay objections were not waived, the affidavits' family history statements were admissible under hearsay exceptions.  *See* TEX. R. EVID. 803(19), (20); *Akers v. Stevenson*, 54 S.W.3d 880, 885–86 (Tex. App.—Beaumont 2001, pet. denied) (admitting family history and boundary deposition testimony for events occurring before the deponent's birth based on hearsay exceptions (19) and (20)).

### 5.    *Other Objections to Affidavits*

San Miguel also argues the affidavits are largely conclusory, are not based on personal knowledge, and W.T. Guerra Sr.'s interested witness affidavit could not be readily controverted.

In W.T. Guerra Sr.'s affidavit, he avers that the facts he recites are based on his growing up in the area, visiting the land, talking with ancestors and relatives who worked the land, and listening to the oral histories related by his ancestors and relatives. His statements of specific facts regarding his birth, ancestry, family histories, and personal observations were based on his personal knowledge; they were not merely conclusory, and they are competent summary judgment evidence. *See Choctaw Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 242 (Tex. App.—Waco 2003, no pet.) (quoting *Rodriguez v. Wal-Mart Stores, Inc.*, 52 S.W.3d 814, 823 (Tex. App.—San Antonio 2001), *rev'd in part on other grounds*, 92 S.W.3d 502 (Tex. 2002)) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion.").

Further, his statements regarding the ownership and use of the property were clear, positive, and direct; internally consistent; and could have been readily controverted. *See* TEX. R. CIV. P. 166a(c); *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989) (teaching that "could have been readily controverted" means could have been "effectively countered by opposing evidence").

Similarly, the statements recited above from Pope's affidavit were based on his personal knowledge and supported by specific facts; they were competent summary judgment evidence. *See Choctaw Props.*, 127 S.W.3d at 242; *cf. Winchek v. Am. Exp. Travel Related Servs. Co., Inc.*, 232 S.W.3d 197, 206 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

### 6.      *Prima Facie Evidence of Prior Possession*

The Bank's burden was to produce prima facie evidence of prior possession of the mineral estate, *see Walsh*, 590 S.W.2d at 614; *see also Berry*, 795 S.W.2d at 233, and *Land* and its cited cases show the Bank met its burden.

a.      *Lockett v. Glenn*

In *Lockett v. Glenn*, neither party pled title from the sovereign; the plaintiff "sought to recover upon the ground of prior possession." *Lockett v. Glenn*, 65 S.W. 482, 482 (Tex. 1901) (cited by *Land*, 377 S.W.2d at 187). In a bench trial, the trial court "found that [the plaintiff] had such possession" because "the land was inclosed by fences erected by the plaintiff at the time the defendant entered and took possession." *Id.* *Lockett* affirmed the trial court's judgment based on prior possession. *Id.* *Lockett* necessarily concluded that fencing and occupation were sufficient to show prior possession. *Id.*

b.      *Teagarden v. Patten*

In *Teagarden v. Patten*, the plaintiff took possession of the land, and the plaintiff's "tenant remained upon the land about two years [during which time] he dug a well, built a house, and cleared and cultivated three or four acres of land." *Teagarden v. Patten*, 107 S.W. 909, 912 (Tex. App.—Dallas 1908, writ ref'd). After the tenant left the land, the plaintiff "continued to exercise acts of ownership over it by paying taxes, selling the tie timber, and placing the purchasers of it upon the land to cut and remove said timber." *Id.* The court referred to this evidence as "prima facie evidence of title afforded by appellees' prior possession of the land" and noted the defendant's proof failed to overcome the presumption of prior title. *Id.*

c.      Evidence of Prior Possession

In this case, the affidavits show the Guerras had actual, exclusive, and peaceable possession of the property for decades. *See Land*, 377 S.W.2d at 186; *Lockett*, 65 S.W. at 482; *Berry*, 795 S.W.2d at 233; *Teagarden*, 107 S.W. at 912. The Bank's summary judgment evidence also shows the property's mineral estate was not severed until 1968, so the Guerras' possession of the surface estate was possession of the mineral estate for purposes of limitations. *See Gulley v. Davis*, 321

S.W.3d 213, 220 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *Rio Bravo Oil Co. v. Staley Oil Co.*, 158 S.W.2d 293, 295 (Tex. [Comm'n Op.] 1942)) ("When adverse possession commences before a severance of the mineral estate, the adverse possession includes both the surface and mineral estate. . . . Adverse possession commenced prior to limitations will extend to the mineral estate even if the titleholder severs the mineral estate before the limitations period has fully run.").

I conclude the Bank produced prima facie evidence of prior possession—the Guerras' prior actual, exclusive, and peaceable possession of the mineral interest, which they had not abandoned—sufficient to support summary judgment. *See Land*, 377 S.W.2d at 186; *Lockett*, 65 S.W. at 482; *Berry*, 795 S.W.2d at 233; *Walsh*, 590 S.W.2d at 614; *Teagarden*, 107 S.W. at 912.

## C.     San Miguel's Lack of Evidence of Superior Title

Because the Bank produced prima facie evidence of prior possession, the burden of persuasion shifted to Appellants. *See Berry*, 795 S.W.2d at 234 ("[W]hen the plaintiff establishes a prima facie case, the defendant must introduce evidence raising a material issue of fact if it wishes to avoid a summary judgment . . . in the plaintiff's favor."). San Miguel's burden was to produce some evidence of a superior title in herself sufficient to raise a genuine issue of material fact. *See id.* (citing *Walsh*, 590 S.W.2d at 616).

We take her evidence as true, *see Knott*, 128 S.W.3d at 215, but we do not consider conclusory statements, *see Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion. Conclusory statements in affidavits are not proper as summary judgment proof if there are no facts to support the conclusions.").

San Miguel produced a personal affidavit, an expert affidavit, and an abstract of title.

*1.      San Miguel's Affidavit*

In her affidavit, San Miguel testified that "[her] family has been in possession of some, part, or all the Property at issue in this lawsuit since 1776," but she provides no facts to support her vague conclusion. *See id.* San Miguel does not say who in her family has possessed the land for the last two and one-half centuries, how she has ownership based on some potentially distant relative's alleged ownership interest, what part of the land her family possessed, or how they allegedly possessed the mineral interest at issue. San Miguel's statement is conclusory; it is not competent summary judgment evidence. *See id.*; *Choctaw Props.*, 127 S.W.3d at 242.

*2.      Tax Records*

San Miguel also attached some tax records, but *none* refers to the *mineral interest*:

- a tax record from 2002 (which references dates as early as 1976) but for an unknown number of acres that are part of Abstract No. 289, Porcion 58, but with no further identification of the property's location;
- a tax record from 2006 for 4.73 acres that are part of Porcion 58, but with no further identification of the property's location;
- some Roma ISD tax statements for 2012 and 2017 which pertain to twenty acres that are part of Porcion 58, but with no further identification of the property's location; and
- some Starr County tax statements for 2012 and 2017 which pertain to twenty acres that are part of Porcion 58, but with no further identification of the property's location.

Porcion 58 comprises over 5,733 acres, but the acreage at issue here is only about 781.11 acres. San Miguel does not aver that her family paid taxes on *all* the 5,733 acres (including the 781.11 acres), and nothing in the proffered tax records show that the property on which she asserts her grandmother or her family have paid taxes are part of the 781.11 acres at issue in this case. *Cf. Walsh*, 590 S.W.2d at 615. Further, the mineral estate was severed in 1968, but none of San

Miguel's tax records show that San Miguel's grandmother or family were paying taxes on a severed mineral interest.

San Miguel's affidavit is no evidence of any title to the mineral interest in this case. *See Dolcefino*, 19 S.W.3d at 930.

3.      *San Miguel's Expert's Affidavit*

San Miguel also produced an affidavit from Michael Cies, an expert witness.

Cies observed that the Bank's "abstract of title contains large gaps in ownership," but any gap in the Bank's chain of title is no evidence of title in San Miguel. *See Walsh*, 590 S.W.2d at 614–15 (requiring the defendant to produce evidence of a superior right and title in themselves); *see also Berry*, 795 S.W.2d at 241. Cies testified that "[San Miguel] inherited from her ancestors an interest in the surface and minerals in, on and under Porcion 58, Starr County, Texas," but he provides no facts to support his legal conclusion. *See Dolcefino*, 19 S.W.3d at 930.

As already noted, Porcion 58 is over 5,733 acres, but Cies does not state which part of Porcion 58 San Miguel allegedly inherited. Cies states that San Miguel told him "she has always defended her claim to this property" and she and her family have "always been openly, vigorously and notoriously object[ing] to" the Guerras' claims of ownership of the property.

Assuming without deciding that San Miguel's statements to Cies are not hearsay and could be considered by the court, neither Cies nor San Miguel provide *any* facts to support these broad assertions. *See Dolcefino*, 19 S.W.3d at 930 (requiring facts to support conclusions).

Cies also asserts that "[in] the absence of conveying documents at the Starr County, Texas courthouse, the heirs and descendants of Joaquin Chapa own an interest in the minerals in, on and under Porcion 58, . . . and the Property subject to this lawsuit," but he provides no facts or authorities to support his conclusory statement.

Cies's affidavit is no evidence that San Miguel's right and title are superior to the Bank's. *Cf. Berry*, 795 S.W.2d at 241.

### 4.       *San Miguel's Abstract of Title Evidence*

San Miguel filed an abstract of title which includes some run sheets from the property records and a "Supplemental Abstract of Title." The run sheets appear to be search results from a key word search of the Starr County property records for "Porcion 58" or "Porcion 59." The Supplemental Abstract of Title shows conveyances pertaining to the "Lavor de Tio Carpio," which is within Porcion 58.

Even assuming that San Miguel can trace her interest to the Lavor de Tio Carpio, the supplemental abstract does not point to any record that shows that the Lavor de Tio Carpio is located within the 781.11 acres at issue here.

### 5.       *No Evidence of San Miguel's Superior Claim to Mineral Interest*

The Bank's summary judgment evidence shows the Guerras' dominion over the surface estate—and its unsevered mineral estate—for approximately thirty-five years "without any assertion of right or claim to the [property] by [San Miguel]." *Cf. House*, 35 S.W. at 1065. The Bank established a prima facie case of prior possession, and the burden shifted to San Miguel to produce "evidence to raise an issue of material fact in order to prevent the rendition of a summary judgment." *See Berry*, 795 S.W.2d at 241; *Walsh*, 590 S.W.2d at 616. Nothing in San Miguel's summary judgment proof raises a fact question on whether San Miguel has any ownership of the mineral interest at issue. *See Berry*, 795 S.W.2d at 237; *Walsh*, 590 S.W.2d at 616.

Taking San Miguel's evidence as true, I nevertheless conclude she failed to raise a genuine issue of material fact on her claim of superior title to the mineral interest.

**D.      Rendon's Arguments**

Because the Bank met its burden to show prima facie evidence of its prior possession, the burden shifted to Rendon to produce evidence of her superior right and title to the property.  *See Berry*, 795 S.W.2d at 241; *Walsh*, 590 S.W.2d at 616.  Rendon does not assert that she produced any summary judgment evidence of her own superior title.  Instead, she argues that the Bank failed to conclusively prove at least one essential element for each of its ownership theories.

Because the Bank produced prima facie evidence of prior possession, and Rendon does not even argue that she produced any evidence of superior title in herself, her issue challenging the Bank's title by prior possession should be overruled and her other issues dismissed as moot.

## CONCLUSION

The Bank met its burden to produce prima facie evidence of prior possession, and the burden shifted to San Miguel.  But she failed to raise a genuine issue of material fact, and the trial court properly granted summary judgment for the Bank.

Because the majority concludes otherwise, I respectfully dissent.

Patricia O. Alvarez, Justice