Affirmed, in Part; Reversed and Remanded, in Part; and Opinion filed
January 25, 2005









 

Affirmed, in Part; Reversed and Remanded, in Part; and
Opinion filed January 25, 2005.

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00633-CV

____________

 

GARY JORDAN and
BILL JORDAN, Individually and as Independent Executors of the Estate of LEONARD
C. JORDAN, Deceased, Appellants

 

V.

 

VINCENT BUSTAMANTE, Appellee

 



 

On Appeal from the 280th
District Court

Harris County, Texas

Trial Court Cause No. 99-18609

 



 

O P I N I O N

This is a double appeal involving two
tracts of land.  Gary Jordan and Bill
Jordan, Individually and as Independent Executors of the Estate of Leonard C.
Jordan, Deceased (collectively, the AJordans@), appeal the
trial court=s final judgment of April 28, 2003,
awarding Vincent Bustamante (ABustamante@) a 155-acre tract
of land.  Bustamante appeals the same
judgment awarding the Jordans a 29-acre tract of land.  We affirm, in part, and reverse and remand,
in part.  








                                                 Background

                                       Procedural
History:  155 Acres

On May 8, 1992, Cypress-Fairbanks
Independent School District filed suit against the Jordans for the collection
of delinquent ad valorem taxes on a 155-acre tract in the 295th District Court
(the Afirst tax suit@).  On December 1, 1993, the 295th District Court
signed an agreed judgment in favor of Cypress-Fairbanks and Harris County
(Intervenor) against the Jordans for delinquent real estate taxes on the 155
acres and provided for an order of sale. 
On January 24, 1995, the Harris County District Clerk issued an Aalias@ order of sale,
and on April 4, 1995, Cypress-Fairbanks purchased the 155 acres at a constable=s sale held
pursuant to the order of sale.  On May 9,
1995, the constable=s deed to Cypress-Fairbanks was recorded
in the Harris County real property records. 
On July 14, 1997, Cypress-Fairbanks sold the 155 acres to Bustamante for
$111,024.36 in cash.  Bustamante received
a tax resale deed, which was recorded in the Harris County real property
records on September 24, 1997. 

                                        Procedural
History:  29 Acres

On November 16, 1995, a tax suit was filed
by Cypress-Fairbanks against the Jordans on a 29-acre tract in the 157th
District Court (the Asecond tax suit@).  On June 26, 1997, the court signed a default
judgment in favor of Cypress-Fairbanks and the IntervenorsCHarris County,
Harris County Education Department, Port of Houston of Harris County Authority,
Harris County Flood Control District, Harris County Hospital District, and
Harris County Emergency Service District No. 9Con the 29
acres.  On December 5, 1997, Cypress
Fairbanks assigned the judgment to Bustamante=s wife, Elaine
Paleologo.  

On August 11, 1998, the Harris County
District Clerk issued an order of sale, and on November 3, 1998, Bustamante
purchased the 29 acres $106,129.00 in cash at a constable=s sale held
pursuant to the order of sale.  On
January 14, 1999, the constable=s deed to
Bustamante on the 29 acres was recorded in the Harris County real property
records.  








Excess proceeds from the sale of the 29
acres were deposited into the registry of the court.  On January 21, 1999, the Jordans moved to
withdraw the $98,000.15 in excess proceeds. 
On January 28, 1999, the Jordans moved to set aside the tax sale of the
29 acres to Cypress-Fairbanks on the ground that such sale was void because the
lienholdersCthe Internal Revenue Service (AIRS@) and the StateCwere not joined in
the tax suit, and further sought subrogation to the tax liens and the return of
any excess funds.[1]  

On March 1, 1999, the IRS filed a
disclaimer of interest in the 29 acres, while on March 11, 1999, the State of
Texas claimed the excess proceeds.  The
Tax Master recommended that the State be awarded the excess proceeds and,
accordingly, on June 14, 1999, the trial court signed an order disbursing the
excess funds to the State.

                                      Current Suit on 155
and 29 Acres

On April 13, 1999, Bustamante filed suit
against the Jordans, Cypress-Fairbanks, Harris County, and the State seeking,
among other relief, the removal of the cloud on his title to the 29 acres
created by a lien previously filed by the State for unpaid taxes.  On June 16, 1999, the Jordans filed a
counterclaim expanding the dispute to include the 155 acres, in addition to the
29 acres.  The Jordans requested that the
tax sales to both the 29 and 155 acres be set aside for because the lienholdersCthe State and the
IRSCwere not parties
to the tax suits.  








On April 26, 2000, trial commenced against
the Jordans on both the 29 and 155 acres.[2]  Bustamante announced to the trial court that
he wanted to abandon the following sentence in his first amended petition:  AIn addition,
Bustamante seeks a declaration that his title and right to possession of the
property is superior to all of the defendants.@  The Jordans filed a brief in support of their
proposed findings of fact and conclusions of law arguing that Bustamante had
abandoned his only viable cause of action by which he could recover the
property, i.e., trespass to try title. 


On July 24, 2000, the trial court signed
the judgment, awarding Bustamante title to and possession of both the 29 acres
and 155 acres.  However, Bustamante filed
a motion for new trial in which he pointed out that the Jordans had argued, in
light of his abandoning the above quoted sentence from his first amended
petition, that (1) his case was a trespass to try title action, (2) a trespass
to try title was his exclusive remedy, and (3) he did not prove his trespass to
try title action.  Although Bustamante
did not agree with the Jordans, he was concerned they would appeal and title to
the property would remain clouded during the pendency of the appeal.  Bustamante requested the trial court grant a
new trial to allow him to amend his pleadings to allege an action in trespass
to try title, as well as actions under the Texas Tax Code and the Declaratory
Judgment Act.  On September 5, 2000, the
trial court granted Bustamante=s motion for new
trial and awarded $7,897.40 in attorney fees to the Jordans.

On October 8, 2001, Bustamante nonsuited
his case as the plaintiff against the Jordans. 
Bustamante also filed a motion to realign the parties in which he
asserted that because he had nonsuited the Jordans, and the Jordans were the
only parties with affirmative claims by virtue of their third amended
counterclaim, they should be the plaintiffs and Bustamante the defendant.  Bustamante filed an amended answer asserting
a general denial, a plea of Anot guilty,@ and affirmative
defenses to the Jordans= counterclaim.  On August 9, 2002, the trial court granted
Bustamante=s motion to realign the parties, ordering
that the Jordans were the plaintiffs and that Bustamante was the
defendant.  








The Jordans moved for summary judgment on
both the 29 and 155 acres on their trespass to try title action asserting that
they had proved a regular chain of conveyances from the sovereignty.  The Jordans also argued that Bustamante had
abandoned his trespass to try title action and his claim to superior title and
right of possession, the tax sales were void because the lienholders were not
joined in the tax suits, and they had standing to complain about the failure to
join the lienholders in the tax suits.  

On February 17, 2003, with respect to the
29 acres, the trial court granted the Jordans= motion for
summary judgment, setting aside the tax foreclosure sale on the 29 acres and
ordering that any lien in existence at the time of the foreclosure sale would
remain a burden on the property to the extent such lien had not been
satisfied.  With respect to the 155 acres,
the trial court denied the Jordans= motion for
summary judgment and conducted a bench trial, after which it awarded Bustamante
the 155 acres.  On April 28, 2003, trial
court entered a final judgment on the 29 and 155 acres.  

 The Jordans= Appeal of the
Award of 155 Acres to Bustamante

                   Abandonment of
Cause of Action for Trespass to Try Title

In their appeal, the Jordans claim the
trial court abused its discretion in awarding Bustamante the 155 acres.  The Jordans first argue that when Bustamante
voluntarily abandoned his trespass to try title action during the first trial
pursuant to Rule 165 of the Rules of Civil Procedure, he abandoned the only
available remedy by which he could obtain title to the 155 acres.  See Tex.
R. Civ. P. 165 (AA party who abandons any part of his claim
or defense, as contained in the pleadings, may have that fact entered of
record, so as to show that the matters therein were not tried.@).  








AA trespass to try
title action is the method for determining title to lands, tenements, or other
real property.@  Tex. Prop. Code Ann. ' 22.001(a) (Vernon
2000); Rogers v. Ricane Enters., Inc., 884 S.W.2d 763, 768 (Tex.
1994).  It is the exclusive remedy by
which to resolve competing claims to property. 
Ely v. Briley, 959 S.W.2d 723, 727 (Tex. App.CAustin 1998, no
pet.).  Any suit involving a dispute over
the title to land is, in effect, an action in trespass to try title, whatever
its form and regardless of whether legal or equitable relief is sought.  Hawk v. E.K. Arledge, Inc., 107 S.W.3d
79, 84 (Tex. App.CEastland 2003, pet. denied); Jordan v.
Exxon Corp., 802 S.W.2d 880, 883 (Tex. App.CTexarkana 1991, no
writ).  

In his first amended petition (the Alive@ pleading during
the first trial), Bustamante sought, among other relief, Aa declaration that
his title and right to possession [are] superior to all of the defendants.@  During the first trial, Bustamante announced
to the trial court that he wanted to abandoned that sentence.  The Jordans allege Bustamante, having
abandoned his trespass to try title action, effectively abandoned the only
cause of action he had and, therefore, the trial court should have entered
judgment that Bustamante take nothing.  

In response, Bustamante asserts that he
did not file a trespass to try title action. 
Bustamante sought a judicial determination that Ahis title and
right to possession [are] superior to all of the defendants.@  Bustamante=s petition has
clearly alleged a competing claim to title to the 155 acres.  See Hawk, 107 S.W.3d at 84 (stating
that any suit involving dispute over title to land is action in trespass to try
title); Jordan, 802 S.W.2d at 883 (same).  However, it appears Bustamante sought this
determination in the context of a declaratory judgment action.  While the Declaratory Judgment Act provides a
procedural method for the construction or validity of deeds by those whose
rights are affected by such instruments, the substantive rights of the parties
are governed by the trespass to try title statutes.  Kennesaw Life & Acc. Ins. Co. v. Goss,
694 S.W.2d 115, 117B18 (Tex. App.CHouston [14th
Dist.] 1985, writ ref=d n.r.e.). 
Therefore, a declaratory judgment action cannot be used to adjudicate
title and a trespass to try title because section 22.01 is the exclusive remedy
by which to do so.  Ely, 959
S.W.2d at 727.  For reasons addressed
below, however, we need not address whether Bustamante attempted to have title
to the property determined in a declaratory judgment action or whether he
abandoned his trespass to try title action during the first trial to resolve
the question of the 155 acres.  








After the trial court awarded Bustamante
title and possession to both the 29 and 155 acres during the first trial,
Bustamante filed a motion for a new trial in which he pointed out that the
Jordans had argued (1) his case was a trespass to try title action, (2) a
trespass to try title action was his exclusive remedy, and (3) he had not
proved superior title to the property. 
Bustamante explained he was concerned the Jordans would appeal the
judgment, and title to the property would remain clouded during the pendency of
the appeal.  Bustamante requested that
the trial court grant a new trial to allow him to amend his pleadings in order
to allege an action in trespass to try title, as well as actions under the
Texas Property Tax Code and the Declaratory Judgment Act.  On September 5, 2000, the trial court granted
Bustamante=s motion for new trial.  

Rule 165 of the Rules of Texas Civil
Procedure provides that A[a] party who abandons any part of his
claim or defense, as contained in the pleadings, may have that fact entered of
record, so as to show that the matters therein were not tried.@  Tex.
R. Civ. P. 165.  Rule 165 permits
the abandonment of a claim or defense before, but not after, trial and entry of
judgment.  Person v. Latham, 582
S.W.2d 246, 250 (Tex. Civ. App.CBeaumont 1979,
writ ref=d n.r.e.).  








The Jordans assert that an abandoned cause
of action cannot be revived.  In support
of this contention, the Jordans rely on an opinion from this court, Goffney
v. Rabson, 56 S.W.3d 186 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  A review of
our opinion in Goffney establishes that it does not support the
proposition for which it is cited by the Jordans.  In Goffney, the plaintiff sued her
attorney for legal malpractice, breach of contract, Deceptive Trade Practices
Act-Consumer Protection Act (DTPA) violations, and breach of fiduciary duty in
connection with her attorney=s representation
of her.  Id. at 188.  Prior to trial, the plaintiff dropped her legal
malpractice claim from her petition and proceeded to trial on her remaining
claims with the jury finding in her favor on the claims against her
attorney.  Id.  The trial court entered a final judgment in
favor of the plaintiff.  Id.  The narrow issue addressed in our opinion was
whether the plaintiff=s breach of contract, breach of fiduciary
duty, and DTPA claims were essentially legal malpractice claims.  Id. at 190.  We determined that those claims were, in
fact, legal malpractice claims and held, under well-settled law, that a client
cannot Adivide or fracture@ legal malpractice
claims into additional causes of action and, therefore, the plaintiff could not
recover from her attorney because she had no viable cause of action upon which
to recover after she had abandoned her legal malpractice claim.  Id.

The Jordans also rely on an opinion from
the United States Court of Appeals for the Tenth Circuit, Castro v.
Arkansas-Louisiana Gas Co., 597 F.2d 1323 (10th Cir. 1979), for the
proposition that abandonment of a cause of action precludes any subsequent
action for the same cause.  We find Castro
is also inapplicable to the case at hand. 
In Castro, the plaintiffs sued a gas company for damages for loss
of property and loss of consortium sustained in a gas explosion in their
home.  Id. at 1324.  However, prior to trial, the husband elected
not to proceed on his claim for loss of consortium.  Id. 
Explaining that a plaintiff may not split a single cause of action, the Castro
court held where a plaintiff Aincludes multiple
claims for his damages from the single tort on which the suit is based, and in
silence drops one claim, he may not, after judgment in that suit, maintain a
separate second suit on that dropped claim.@  Id. at 1326 (emphasis added).

We recognize that abandoning a cause of
action can have a res judicata effect.  See
Jones v. Nightengale, 900 S.W.2d 87, 90 (Tex. App.CSan Antonio 1995,
writ ref=d).  In Jones, the plaintiff brought claims
for negligence and breach of contract, but abandoned (pursuant to Rule 165) her
breach of contract claim the day after the trial began.  Id. at 88.  The jury found no negligence and judgment was
entered and became final.  Id.  Thereafter, the plaintiff sent a letter to
the defendant threatening litigation over the previously abandoned breach of
contract claim.  Id.  Rejecting the plaintiff=s argument that
her contract claim was not barred by res judicata because she had expressly and
properly excluded it when she abandoned it pursuant to Rule 165, the San
Antonio Court of Appeals explained that the plaintiff sought to recover for
injuries stemming from a single occurrence under negligence and contract
theories.  Id. at 89.  That situation did not occur here.








Unlike Goffney, Castro, and Jones,
the trial court in this case granted a new trial, reinstating the case on the
docket as if no trial had occurred and, therefore, the final judgment did not
stand.[3]  

Moreover, Bustamante still claimed better
title to the property.  On October 8,
2001, Bustamante nonsuited his case as the plaintiff against the Jordans and
filed a motion to realign the parties in which he asserted that because he had
nonsuited the Jordans, and the Jordans had filed a third amended counterclaim,
the Jordans were the only parties with affirmative claims and, therefore, they
should be the plaintiffs and Bustamante the defendant.  Bustamante also filed an answer, asserting a
plea of Anot guilty,@ a general denial,
and several affirmative defenses.  By his
general denial and his plea of Anot guilty@ to the Jordans= trespass to try
title action, Bustamante claimed better title to the property.  See Bellaire Kirkpatrick Joint Venture v.
Loots, 826 S.W.2d 205, 209 (Tex. App.CFort Worth 1992,
writ denied) (explaining that when title is disputed, defendant admits
possession, but claims better title)[4].  








The Jordans further allege that Bustamante=s abandonment of
his trespass to try title action in the first trial was a formal disclaimer of
any interest in the property.  A
disclaimer is neither an answer nor a defensive plea; instead, it is A>a solemn
declaration, made in court, that the declarant has not title to either the
whole or a portion of the property in litigation, and it is, in effect, an
admission that the adverse party has a right to the property; . . .=@  Sanders v. Taylor, 500 S.W.2d 684, 686
(Tex. Civ. App.CFort Worth 1973, no writ) (quoting Scanlan
v. Hitchler, 19 Tex. Civ. App. 689, 48 S.W. 762, 764 (1898, no writ)); Haltom
v. McKinley, 64 S.W.2d 1060, 1066 (Tex. Civ. App.CTexarkana 1933,
writ dism=d). 
Thus, a defendant=s disclaimer entitles the plaintiff to
judgment against the defendant for all land at issue which has been disclaimed
without the need to introduce evidence.  Jordan,
802 S.W.2d at 883; Clarady v. Bonin, 597 S.W.2d 445, 447 (Tex. Civ. App.CBeaumont 1980,
writ ref=d n.r.e.); Williams
v. Humble Oil & Ref. Co., 139 S.W.2d 346, 349 (Tex. Civ. App.CEl Paso 1940, writ
dism=d judgm=t cor.).  Once a disclaimer has been made, it cannot be
withdrawn or retracted without the trial court=s permission,
subject to its discretion.  Sanders,
500 S.W.2d at 686 (quoting Scanlan, 48 S.W. at 764).  








On October 19, 2001, after Bustamante had
nonsuited the Jordans and moved to realign the parties, the Jordans filed a
fourth amended counterclaim against Bustamante in which they asserted that
Bustamante had Aabandoned and/or disclaimed@[5] his right to
superior right to title and to possession of the property.  Although Bustamante disagreed with the
Jordans= assertion that
abandoning a sentence from his first amended petition during the first trial
constituted a disclaimer of his claim to superior right to title and to
possession of the property, he nonetheless moved to withdraw the Aalleged
disclaimer.@  On
February 17, 2003, the trial court granted Bustmante=s motion.  Thus, any alleged disclaimer was withdrawn
with the permission of the trial court.  See
Sanders, 500 S.W.2d at 686 (stating disclaimer cannot be withdraw without
permission of trial court).  The Jordans
do not otherwise assert that the trial court abused its discretion.  

In summary, whether or not Bustamante
abandoned his trespass to try title action during the first trial is not
relevant because the trial court granted his motion for new trial thereby
returning the case to the position it was in had it never been tried.  Thus, Bustamante still asserted superior
title to the property in the Jordans= trespass to try
title action.  Finally, to the extent
that the Jordans contend Bustamante disclaimed his interest in the 155 acres,
such disclaimer was withdrawn with the trial court=s permission. 

                                     Validity of Tax
Judgment and Sale

The Jordans assert the tax sale is void
because when the taxing unit, Cypress-Fairbanks, initiated its suit for
delinquent taxes, it prosecuted the suit to full judgment without ever joining
the State or the IRS, both of which had tax liens against the property.  In support of this contention, the Jordans
rely on Norris v. Harry Hott & Assocs., Inc., 612 S.W.2d 630 (Tex.
Civ. App.CDallas 1981, no writ).  Our review of Norris reflects that it
does not support the Jordans= position.  

In Norris, when the State filed its
tax foreclosure suit, two partiesCHott and RunnymeadCeach had a deed in
their favor to the land in question on file in the deed records of Dallas
County.  Id. at 631.  While Runnymead was made a party in the State=s tax suit, Hott
was not.  Id. at 632.  Observing that a tax foreclosure suit must
include the record owner and all parties owning or claiming any interest in the
property, the Dallas Court of Appeals held that the State=s foreclosure
judgment remained valid as to Runnymead (the party named in the tax suit), but
did not bind Hott (the party not named in the tax suit).  Id. at 632.  








Here, the judgment in the first tax suit
is not wholly void, but is valid as to the Jordans, who were part of that
suit.  See, e.g., Loper v. Meshaw
Lumber Co., 104 S.W.2d 597, 599B600 (Tex. Civ.
App.CEastland 1937,
writ dism=d) (stating judgment in tax suit is not
void because all parties owning interest are not made parties; instead,
judgment foreclosing tax lien is good as against parties joined in suit, but
parties not joined are not bound by judgment); Adams v. West Lumber Co.,
162 S.W. 974, 976 (Tex. Civ. App.CTexarkana 1913,
writ ref=d) (explaining
that parties to proceedings are bound by judgment while those who were not
parties to proceedings are not bound by judgment).  Because the State and the IRS were not joined
in the first tax suit, their lien interests were not disposed of and Bustamante
took the 155 acres subject to those liens. 
See First State Bank-Keene v. Metroplex Petroleum Inc., 155 F.3d
732, 737 (5th Cir. 1998) (explaining that tax suit was not wholly void, but
because FDIC was not party to tax suit, its lien interest was not disposed of
and appellants took property subject to its lien).  








However, the Jordans do not have standing
to complain of any alleged injury to the State or the IRS due to
Cypress-Fairbanks= failure to join them as parties in the
first tax suit.  See Sweed v. City of
El Paso, No. 08-00-00195, 2001 WL 1469071, at *2 (Tex. App.CEl Paso Nov. 20,
2001, pet. denied) (not designated for publication) (holding failure to join
all interested parties in delinquent tax suit did not deprive trial court of
power to render valid judgment against those actually named, and appellant had
no standing to assert any rights on behalf of third party).  A party may not complain of errors that do
not injuriously affect it or that merely affect the rights of others.  In re P.R., 994 S.W.2d 411, 416 (Tex.
App.CFort Worth 1999,
pet. dism=d w.o.j.), disapproved on other grounds
by In re J.F.C., 96 S.W.3d 256, 267 (Tex. 2002); see also McDaniel v.
Texas Natural Res. Conservation Comm=n, 982 S.W.2d 650,
654 (Tex. App.CAustin 1998, pet. denied) (landowner did
not have standing to assert interest of adjacent landowners who did not receive
notice from Commission of applicant=s affiliation with
another party); Copher v. First State Bank, 852 S.W.2d 738, 740 (Tex..
App.CFort Worth 1993,
no writ) (judgment debtor had no standing to assert interest of party who
allegedly was never given notice of hearing); American Operating Co. v.
Railroad Comm=n of Tex., 744 S.W.2d 149,
155 (Tex. App.CHouston [14th Dist.] 1987, writ denied)
(holding unit owner had no standing to challenge lack of notice to royalty
interest lessor); Murmur Corp. v. Board of Adjustment, 718 S.W.2d 790,
793 (Tex. App.CDallas 1986, writ ref=d n.r.e.) (holding
subsequent purchaser of property had no standing to complain of lack of notice
to former owner).  

                                               Statute of
Limitations

The Jordans are further precluded under
Section 33.54 of the Texas Property Tax Code from challenging Bustamante=s title to the 155
acres purchased from Cypress-Fairbanks.  See
Tex. Tax Code Ann. ' 33.54 (Vernon
2001).  An action for title to property
may not be maintained against the purchaser of the property at a tax sale
unless the action is commenced Abefore the first
anniversary of the date that the deed executed to the purchaser at the tax sale
is filed of record.@  Id.
at ' 33.54(a)(1).  A person may not Acommence@ an action against
the purchaser of the property unless he deposits into the registry of the court
an amount equal to that of the delinquent taxes, penalties, and interest
specified in the foreclosure judgment, plus all costs of the tax sale.  Tex.
Tax Code Ann. ' 34.08(a)(1) (Vernon 2001).  Moreover, a person may not commence an action
challenging the validity of the tax sale after the time set forth in ' 33.54(a)(1).  Id. at ' 34.08(b).  








Cypress-Fairbanks purchased the 155 acres
in the constable=s sale on April 4, 1995.  The constable=s deed to
Cypress-Fairbanks was recorded in the Harris County real property records on
May 9, 1995.  Bustamante filed suit on
the 29 acres on April 13, 1999.  On June
16, 1999, the Jordans filed a counterclaim against Bustamante on both the 29
and 155 acres.  Therefore, the Jordans
failed to commence their action on the 155 acres by the one-year anniversary of
the recording of the constable=s deed to
Cypress-Fairbanks, i.e., May 9, 1996, instead, waiting more than three
years after the date on which the constable=s deed to
Cypress-Fairbanks was filed.[6]  Therefore, such action is barred under ' 33.54 and the
purchaser at the tax sale (Cypress-Fairbanks) or the purchaser=s successor in
interest (Bustamante) has full title to the 155 acres precluding all other
claims.  See Tex. Tax Code Ann. ' 33.54(c) (AWhen actions are
barred by this section, the purchaser at the tax sale or the purchaser=s successor in
interest has full title to the property, precluding all other claims.@); see also
Tex. Tax Code Ann. ' 34.08(b) (AThe purchaser may
conclusively presume that the tax sale was valid and shall have full title to
the property free and clear of the right, title, and interest of any person
that arose before the tax sale, . . .@).  

The Jordans contend ' 33.54 is not
operative outside the confines of the trespass to try title statute.  Therefore, according to the Jordans,
Bustamante=s limitations defense under ' 33.54 Adied@ when his trespass
to try title action was extinguished by abandonment.  As previously addressed, the trial court
granted Bustamante=s motion for new trial, putting the case
back in the same position as if no trial had occurred.  Thereafter, the Jordans asserted a trespass
to try title action against both the 29 and 155 acres in their third amended
counterclaim.  Bustamane filed an answer
to the Jordans= third amended counterclaim, asserting a
general denial, a plea of Anot guilty,@ and several
affirmative defenses, including ' 33.54
limitations, and nonsuited his affirmative claims against the Jordans, leaving
the Jordans as the plaintiffs and Bustamante as the defendant in this trespass
to try title action.  By asserting a
general denial and pleading Anot guilty,@ Bustamante
claimed better title to the property.  Bellaire
Kirkpatrick Joint Venture, 826 S.W.2d at 209.  Thus, Bustamante asserted ' 33.54 limitations
as an affirmative defense to the Jordans= trespass to try
title action.








The Jordans further claim that a party attempting to
establish title by asserting ' 33.54 limitations
must introduce, in addition to the tax deed, the same documentation that proves
a valid tax deed, including the tax judgment and order of sale.  See Volunteer Council of Denton State
Sch., Inc. v. Berry, 795 S.W.2d 230, 238 (Tex. App.CDallas 1990, no
writ).  The Jordans= reliance on the Berry
case is misplaced.  The court in Berry
based its decision on a reading of a previous version of ' 33.54 which
provided:

No cause of action or defense may be asserted or maintained
on a claim respecting any land sold for delinquent taxes at a tax sale pursuant
to a judicial foreclosure of a tax lien, unless the cause of action or
defense is asserted in an action commenced within three years after the filing
of record of the deed executed to the purchaser at the tax sale.

Id. at 238 (quoting Tex. Rev. Civ. Stat. Ann. art. 7345(b)-3(a)) (emphasis in
original).[7]  The Berry court explained that the
italicized language of former ' 33.54 required a
tax deed proponent to show the sheriff=s authority to
sell before proving a valid deed.  Id.
at 240.  The Berry court
recognized the italicized language was dropped when the legislature recodified
article 7345b-3(a) in ' 33.54 of the Tax Code, but, nonetheless,
held that in order to invoke the protections of ' 33.54, a party
must introduce the same documentation that proves a valid tax deed.  Id.

The San Antonio Court of Appeals disagreed
and rejected that same argument.  See
Cedillo v. Gaitan, 981 S.W.2d 388 (Tex. App.CSan Antonio 1998,
no writ).  After reviewing the language
and history of ' 33.54, the Cedillo court found Ano reason to
interpret section 33.54 other than as it was written and enacted by the Texas
Legislature.@  Id.
at 393.  The San Antonio Court of
Appeals, therefore, held the plaintiffs= suit in that case
was barred because it was not filed within three years after the date the tax
deed was recorded.  Id. at 393.[8]  








In light of the plain language of ' 33.54 and the San
Antonio Court of Appeals decision in Cedillo, we reject the Jordans= contention that
Bustamante was required to introduce the tax judgment and order of sale in
order to rely on ' 33.54 limitations.  The trial court did not abuse its discretion
in awarding Bustamante the 155 acres in its final judgment. 

                                 Bustamante=s Cross-Appeal

Bustamante appeals the granting of summary
judgment in favor of the Jordans awarding them the 29 acres.  The Jordans moved for summary judgment on the
following grounds: (1) they could prove their title back to the sovereign, (2)
Bustamante had abandoned his trespass to try title action, (3) the tax sales
were void because the State and the IRS were not joined in the tax suit even
though they were lienholders, (4) the tax sale was void because the assignment
of the tax judgment to Bustamaent=s wife was not
signed by the president of the board of trustees of the school district; (5)
they have standing to challenge the failure to join the lienholders in the tax
suit; and (6) their claim is not subject to the statute of limitations.  








In response to the Jordans= motion for
summary judgment, Bustamante argued (1) the Jordans= action was barred
by res judicata, (2) the Jordans lacked standing to complain about the failure
to join the State and the IRS, (3) the Jordans could not collaterally attack an
agreed judgment from a forcible entry and detainer action giving Bustamante
possession to the entire 184 acres, (4) the Jordans= action was barred
by ' 33.54
limitations, (5) the Jordans= action was barred
by ' 34.08 for failing
to deposit an amount equal to the tax judgment and costs into the registry of
the court, (6) the Jordans ratified the constable=s sale by seeking
the excess proceeds, and (7) the Jordans failed to tender the debt for all
taxes paid by Bustamante.  The trial
court granted the Jordans= motion for summary judgment on the 29
acres and ordered the tax foreclosure sale set aside, and any lien in existence
at the time of the foreclosure sale remain a burden on the property to extent
such lien had not been satisfied.

                   Abandonment of
Cause of Action for Trespass to Try Title

The Jordans assert Bustamante=s abandonment of
his trespass to try title claim is dispositive of his appeal of the judgment
awarding the 29 acres to them.  As
addressed above, we conclude Bustamante still claimed title when he pleaded Anot guilty.@  In their second amended counterclaim, which
was the Jordans= live pleading during the first trial, the
Jordans asserted title to the 29 acres. 
In his response to their claim to the 29 acres, Bustamante asserted a general
denial, a plea of Anot guilty,@ and affirmative
defenses.  Therefore, Bustamante asserted
possession and better title to the 29 acres, forcing the Jordans to prove their
title was superior.  We conclude
Bustamante did not abandon his claim to the 29 acres. 

                                     Validity of Tax
Judgment and Sale

The Jordans contend again that the tax
sale is void because the IRS and the State as lienholders were not joined in
the tax suit.  The State issued a partial
release of its $600,000 lien on the 29 acres after having been awarded the
excess proceeds.  The IRS also filed a ADisclaimer of
Interest@ in the 29
acres.  In any event, as noted above, the
tax judgment was not void as to the Jordans who were parties to the suit[9]
and the Jordans do not have standing to complain about any failure to join the
State and the IRS in the tax suit.[10]  








The Jordans further argue the tax sale was
void because the president of the school district=s board of
trustees did not execute the Aquitclaim deed@ to Bustamante=s wife, Elaine
Paleologo.  See Tex. Educ. Code Ann. ' 11.154(b) (Vernon
1996) (providing, in relevant part, AThe president of
the board of trustees shall execute a deed to the purchaser of the property
reciting the resolution of the board of trustees authorizing the sale.@).  Cypress-Fairbanks assigned the judgment to
Bustamante=s wife, it did not convey the property by
means of a quitclaim deed.  Section
11.154 specifically refers to a Adeed@ executed by the
president of the board of trustees, not an assignment of a judgment.  In any event, we find no authority that any
failure of the president of the board to sign the assignment of judgment voids
the subsequent tax sale.  Cf. R.B.
Spencer & Co. v. Brown, 198 S.W. 1179, 1181 (Tex. Civ. App.CEl Paso 1917, writ
ref=d) (holding it was
not intention that failure to recite board resolution authorizing sale should
nullify deed).  

                                               Statute of
Limitations

As with the 155 acres, Bustamante asserts
the Jordans action to set aside the constable=s deed to the 29
acres is barred by ' 33.54 limitations.  As discussed above, ' 33.54(a)(1)
provides Aan action relating to the title to
property may not be maintained against the purchaser of the property at a tax
sale unless the action is commenced: (1) before the first anniversary of
the date that the deed executed to the purchaser at the tax sale is filed of
record; . . .@  Tex. Tax Code Ann. ' 33.54 (emphasis
added).  

The constable=s deed to
Bustamante on the 29 acres was recorded in the Harris County real property
records on January 14, 1999.  The
Jordans, therefore, would have to commence their action on the 29 acres by
January 13, 2000.  The Jordans filed
their action to set aside the tax sale on June 16, 1999.  








However, A[a] person may not
commence an action that challenges the validity of a tax sale under this
chapter unless the person: (1) deposits into the registry of the court an
amount equal to the amount of the delinquent taxes, penalties, and interest
specified in the judgment of foreclosure obtained against the property plus all
costs of the tax sale.@  Tex. Tax Code Ann. ' 34.08(a)(1).  The Jordans did not deposit any funds into
the registry of the court as required by section 34.08(a)(1) of the Texas
Property Tax Code until April 26, 2000. 
Having failed to make the required deposit until after January 13, 2000,
the Jordans Amay not commence an action challenging the
validity of the tax sale after the time set forth in Section 33.54(a)(1) . . .
against a subsequent purchaser for value who acquired the property in reliance
on the tax sale.@  Id.
at ' 34.08(a)(2).  Therefore, Bustamante Amay conclusively
presume that the tax sale was valid and shall have full title to the property
free and clear of the right, title, and interest of any person that arose
before the tax sale, subject . . . to applicable rights of redemption.@  Id. 
The Jordans have not shown that they attempted to redeem the property.

The Jordans argue that by abandoning his
trespass to try title action, Bustamante abandoned his claim to title based on ' 33.54 and ' 34.08
limitations.[11]  As already discussed, Bustamante asserted his
' 33.54 limitations
defense in response to the Jordans= trespass to try
title action.  We hold the Jordans were
barred by ' 33.54 from challenging the validity of
the tax sale to Bustamante.  

However, while Bustamante raised the
statute of limitations in response to the Jordans= motion for
summary judgment, he did not move for summary judgment on this affirmative
defense.  Therefore, we cannot render
judgment, but must remand this portion of the case to the trial court.








                                                   Award of Costs

Finally,
Bustamante contends the trial court erred in ordering that each party pay their
own costs.  Rule 131 of the Texas Rules
of Civil Procedure provides A[t]he successful
party to a suit shall recover of his adversary all costs incurred therein,
except where otherwise provided.@  Tex.
R. Civ. P. 131.  In view of our
ruling on Bustamante=s cross-appeal, we reverse to that portion
of the trial court=s judgment ordering the parties to pay
their own costs and remand to the trial court. 


                                                  Conclusion

We affirm that portion of the trial court=s judgment
awarding Bustamante the 155 acres.  We
reverse that portion of the judgment awarding the Jordans the 29 acres and
remand to the trial court.  We further
reverse that portion of the judgment ordering the parties to pay their own
costs.  Accordingly, the judgment of the
trial court is affirmed, in part, and reversed and remanded, in part.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed January 25, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.











[1]  On January 3,
1989, a State tax lien in the amount of $599,278.70 was recorded in the Harris
County real property records.  The State,
however, was not made a party to the either tax suit.  On May 5, 1995, a notice of federal tax lien
in the amount of $4,210,113.49 against the Leonard C. Jordan Estate was
recorded in the Harris County real property records.  On August 26, 1996, another notice of federal
tax lien in the amount of $4,210,113.48 against the Leonard C. Jordan Estate
was recorded in the Harris County real property records.  The IRS was not made a party to either tax
suit.





[2]  Bustamante
nonsuited the State prior to trial on April 7, 2000.  Bustamante never served any of the taxing
authorities with his suit. 





[3]  See City of San Antonio v. Dickman, 34 Tex. 647, 650 (1870) (stating
granting of new trial reinstates cause on docket as though no trial had been
had); Stanley v. CitiFinancial Mtge. Co., Inc., 121 S.W.3d 811, 816
(Tex. App.CBeaumont 2003, pet. denied)
(explaining that after granting of new trial by trial court, it is as if case
had never been tried); Markowitz v. Markowitz, 118 S.W.3d 82, 88 (Tex.
App.CHouston [14th Dist.] 2003, pet.
denied), cert. denied, __ U.S. __, 125 S. Ct. 69 (2004) (op. on reh=g) (Seymore, J., concurring)
(stating that upon granting of motion for new trial, original judgment is set
aside and parties may proceed without prejudice from previous proceedings); City
of Dallas v. Ormsby, 904 S.W.2d 707, 712 (Tex. App.CAmarillo 1995, writ denied)
(stating effect of granting motion for new trial Awas to wipe clean the factfinding
slate@); State Dep=t of Highways & Pub. Transp. v.
Ross, 718 S.W.2d
5, 11 (Tex. App.CTyler 1986, orig. proceeding)
(stating that after granting new trial, logically any pretrial order would be
obliterated); Electrical Contracting & Maint. Co. v. Perry Distribs.,
Inc., 432 S.W.2d 543, 547 (Tex. Civ. App.CDallas 1968, writ ref=d n.r.e.) (explaining that where
judgment in first trial was set aside and new trial granted by trial court,
jury findings at first trial could not form basis of judgment resulting from
second trial); De Ramirez v. Sovereign Camp, W.O.W., 123 S.W.2d 737, 738
(Tex. Civ. App.CEl Paso 1938, no writ) (quoting Smith
v. Thornton, 119 Tex. 344, 29 S.W.2d 314, 315 (1930)) (explaining that
after granting of new trial, A>case stands upon the docket as if it had not been tried=@).





[4]  Although
Bustamante originally brought suit against the Jordans on the 29 acres, he did
not include the 155 acres.  The Jordans
expanded the dispute to include the 155 acres when they filed their counterclaim.  Bustamante added an affirmative claim for the
155 acres in his first amended petition. 
However, the Jordans= second amended counterclaim, which was their live
pleading at the time of the first trial, makes no mention of the 155 acres,
although their claim to the 155 acres appears again in their third amended
counterclaim.   The Jordans point out
that when Bustamante dropped the sentence in question from his first amended
petition during the first trial and, in the absence of any claim by them for
155 acres at the time of the first trial, Bustamante had no claim for title to
the 155 acres.  Bustamante had by his
answer to the Jordans= second amended counterclaim, which only affirmatively
sought title to the 29 acres, effectively asserted title to the 29 acres only,
not the 155 acres.  However, Bustamante=s answer to the Jordans= third
amended counterclaim was sufficient to assert title to the 155 acres in light
of the trial court=s granting a new trial.  





[5]  Emphasis
added.  





[6]  We also note
that the Jordans did not deposit funds into the registry of the court equal to
the amount of the delinquent taxes, penalties, and interest specified in the
judgment of foreclosure, plus costs of the sale as required to even Acommence@ an
action challenging the validity of the tax sale.  Tex.
Prop. Tax Code Ann. ' 34.08(a)(1).  





[7]  Act of June
15, 1977, 65th Leg., R.S., ch. 663, ' 1, 1977
Tex. Gen. Laws 1680, amended by Act of June 13, 1979, 66th R.S., ch.
841, 1979 Tex. Gen. Laws 2296.





[8]  The former
version of ' 33.54 provided that a cause of action relating to the
title of property could not be maintained against the purchaser of the property
at a tax sale unless the action was commenced within three years after
the deed executed to the purchaser was filed of record.  Act of June 13, 1979, 66th R.S., ch. 841,
1979 Tex. Gen. Laws 2296, amended 1997) (current version at Tex. Tax. Code Ann. ' 33.54).  The
current version of ' 33.54 provides the action must be commenced prior to
the one-year anniversary that the deed executed to the purchaser at the tax
sale is filed of record.  Tex. Tax. Code Ann. ' 33.54.





[9]  See First
State Bank-Keene, 155 F.3d at 737; Loper, 104 S.W.2d at 599B600; Adams, 162 S.W. at 976.





[10]  See Sweed,
2001 WL 1469071, at *2; see also In re P.R., 994 S.W.2d at, 416; McDaniel,
982 S.W.2d at 654; Copher, 852 S.W.2d at 740; American Operating Co.,
744 S.W.2d at 155; Murmur Corp., 718 S.W.2d at 793.  





[11]  The Jordans
also argue that the statute of limitations provision set forth in ' 33.54, which is, and was asserted as, an affirmative
defense, is one of the four methods by which to affirmatively prove a trespass
to try title action.  To prevail in a
trespass to try title action, a plaintiff must usually (1) prove a regular
chain of conveyances from the sovereign, (2) establish superior title out of a
common source, (3) prove title by limitations, or (4) prove title by
prior possession coupled with proof that possession was not abandoned.  Martin v. Amerman, 133 S.W.3d 262, 265
(Tex. 2004).  However, Aproving title by limitations@ means to proving title by adverse possession.  Diversified, Inc. v. Hall, 23 S.W.3d
403, 406 (Tex. App.CHouston [1st Dist.] 2000, pet. denied); Bellaire
Kirkpatrick Joint Venture, 826 S.W.2d. at 209; Wells v. Kansas Univ.
Endowment Ass=n, 825
S.W.2d 483, 486 (Tex. App.CHouston [1st Dist.] 1992, writ denied).